**STATE of Alaska, Appellant,**

v.

**Donald Scott CHANEY, Appellee.**

**No. 1249.**

Supreme Court of Alaska.

Dec. 7, 1970.

G. Kent Edwards, Atty. Gen., Juneau, Harold W. Tobey, Dist. Atty., Robert L. Eastaugh, Asst. Dist. Atty., Anchorage, for appellant.

Herbert D. Soll, Asst. Public Defender, Anchorage, for appellee.

Before BONEY, C. J., and DIMOND, RABINOWITZ, CONNOR and ERWIN, JJ.

## OPINION

RABINOWITZ, Justice.

Appellee Donald Scott Chaney was indicted on two counts of forcible rape and one count of robbery. After trial by jury, appellee was found guilty on all three counts. The superior court imposed concurrent one-year terms of imprisonment and provided for parole in the discretion of the parole board. The State of Alaska has appealed from the judgment and commitment which was entered by the trial court.

First impression issues concerning Alaska's recently enacted legislation establishing appellate review of criminal sentences are presented in this appeal. In Bear v. State,[1] this court concluded that it lacked "jurisdiction to review and remand or to review and revise a criminal sentence for abuse of discretion."[2] *Bear* was subse-

1. 439 P.2d 432 (Alaska 1968).

2. *Id.* at 435. In *Bear*, a majority of the court concluded that:

It is the view of this court that review of legal criminal sentences should be provided for by statute only after a

quently followed in Faulkner v. State[3] and Thessen v. State.[4] In 1969, the Alaska legislature enacted legislation providing for appellate review of criminal sentences.[5] The 1969 act, codified as AS 12.55.120, states in part that:

(a) A sentence of imprisonment lawfully imposed by the superior court for a term or for aggregate terms exceeding one year may be appealed to the supreme court by the defendant on the ground that the sentence is excessive. By appealing a sentence under this section, the defendant waives the right to plead that by a revision of the sentence resulting from the appeal he has been twice placed in jeopardy for the same offense.

(b) A sentence of imprisonment lawfully imposed by the superior court may be appealed to the supreme court by the state on the ground that the sentence is too lenient; however, when a sentence is appealed by the state and the defendant has not appealed the sentence, the court is not authorized to increase the sentence but may express its approval or disapproval of the sentence and its reasons in a written opinion.[6]

In the case at bar, the state has appealed from the sentence imposed. In such circumstances, the provisions of subsection (b) of AS 12.55.120 prohibit any increase in the sentence which was passed by the trial court although this court may express its approval or disapproval of the sentence in a written opinion.

This appeal is the first by the state under the 1969 act. Since this legislation is of great significance to the administration of criminal justice in the State of Alaska, we deem it important to express our approval or disapproval of sentences within this

careful study of the efficacy of reviewing techniques now in force in other jurisdictions has been made, and the need for the procedure determined. Reviewing authority should perhaps include the power to modify a sentence upward as well as downward in order to achieve the full advantage of the procedure and decrease or eliminate disparity in sentences.

*Id.* at 437 (footnote omitted).

3. 445 P.2d 815 (Alaska 1968). In *Faulkner*, Justice Dimond thought the sentence violated both the federal and Alaskan constitutional protections against cruel and unusual punishment. Justice Rabinowitz took the view that the court had jurisdiction to review the sentence and that the sentence was excessive. Chief Justice Nesbett was of the opinion that the court lacked jurisdiction to review the sentence for excessiveness, and further that the sentence did not contravene constitutional protections against cruel and unusual punishment.

4. 454 P.2d 341, 354 (Alaska 1969). In Berfield v. State, 458 P.2d 1008, 1011 (Alaska 1969), we said:

A majority of the court as now constituted has not had occasion to express itself on the question presented in *Bear* of whether this court has jurisdiction to review criminal sentences for abuse of discretion.

5. SLA 1969, ch. 117. A comprehensive study conducted by the Judicial Council played a significant role in the shaping and enactment of this legislation.

6. Subsection (c) of AS 12.55.120 treats the subject of bail in regard to sentence appeals. Sections 1 and 2 of chapter 117, SLA 1969 amended the statutes which delineate the jurisdiction of both the Supreme and Superior Courts of the State of Alaska. In regard to this court's jurisdiction, it was provided that:

The supreme court has jurisdiction to hear appeals of sentences of imprisonment lawfully imposed by the superior courts on the grounds that the sentence is excessive or too lenient and, in the exercise of this jurisdiction, may modify the sentence as provided by law and by the constitution of this state. For the purpose of considering appeals of sentences on these grounds, the supreme court may sit in divisions. (SLA 1969, ch. 117, § 1, codified as AS 22.-05.010(b)).

In order to conform with the changes instituted by chapter 117, SLA 1969, Supreme Ct.R. 6 was amended to read in part as follows:

* * * except that the state shall have a right to appeal in criminal cases * * * on the ground that the sentence is too lenient.

category of sentence appeal.[7] For in our view, the 1969 sentence appeal statute manifests the legislature's awareness of existing deficiencies in sentencing practices throughout Alaska's entire court system and the compelling necessity of developing appropriate sentencing criteria. The primary goal of such legislation is an attempt to implement Alaska's constitutional mandate that "Penal administration shall be based on the principle of reformation and upon the need for protecting the public."[8]

In the case at bar, appellant, the State of Alaska, claims that the one-year concurrent sentences were too lenient in view of the severity of the crimes of forcible rape and robbery, the need to deter others from such brutal behavior, and in view of the presentence recommendations, all of which called for significantly greater sentences than those which were imposed by the superior court.

■ At the threshold, we are confronted with the problem of determining the scope of our review of criminal sentences under the 1969 act. As we interpret this legislative enactment, it is our duty to examine the proceedings below to review for excessiveness or leniency the sentence imposed by the trial court, in light of the nature of the crime, the defendant's character, and the

need for protecting the public. We are also obliged to consider the manner in which the sentence was imposed, including the sufficiency and accuracy of the information upon which it was based.[9] Sentence review by this court must be carried out with a view to effectuate the purposes of the 1969 act, as well as the goals of sentence review in general. The objectives of sentence review have been said to be:

(i) to correct the sentence which is excessive in length, having regard to the nature of the offense, the character of the offender, and the protection of the public interest;

(ii) to facilitate the rehabilitation of the offender by affording him an opportunity to assert grievances he may have regarding his sentence;

(iii) to promote respect for law by correcting abuses of the sentencing power and by increasing the fairness of the sentencing process; and

(iv) to promote the development and application of criteria for sentencing which are both rational and just.[10]

We think this a fair statement of some of the general objectives of sentencing review.

■ Sentencing is a discretionary judicial function.[11] When a sentence is ap-

---

7. The lack of sentence review precedent requires that this court's discretion be exercised in favor of expression of our views in an attempt to articulate and develop sentencing standards. The decision to express our views in appeals by the state on grounds of excessive leniency reflects our awareness of the possibility that distorted criteria could result if review were limited exclusively to claims of excessive harshness.

8. Alaska Const., art. I, § 12.

9. ABA Project on Minimum Standards for Criminal Justice, Standards Relating to Appellate Review of Sentences, Standard 3.2 (Approved Draft, 1968).

10. ABA Project on Minimum Standards for Criminal Justice, Standards Relating to Appellate Review of Sentences, Standard 1.2 (Approved Draft, 1968). Under the 1969 act, codified as AS 12.55.120(b), the state was given the right of appeal on

the ground that the sentence imposed was too lenient. Thus, one of the objectives of sentence review under our statute is to express our disapproval of the sentence which is too lenient, having regard to the nature of the offense, the character of the offender, protection of the public. *See also* the President's Commission on Law Enforcement and Administration of Justice, Task Force Report: The Courts 25–26 (1967).

11. G. Mueller, Penology on Appeal: Appellate Review of Legal but Excessive Sentences, 15 Vand.L.Rev. 671, 684 (1962), says regarding the discretionary aspects of sentencing in criminal law,
[s]entencing is a judicial problem, and as long as the judiciary is vested with a discretionary range of sentences, there must be some guard against a possible abuse of such discretion, just as there is appellate supervision over every other exercise of judicial discretion.

pealed, we will make our own examination of the record and will modify the sentence if we are convinced that the sentencing court was clearly mistaken in imposing the sanction it did.[12] Under Alaska's Constitution, the principles of reformation and necessity of protecting the public constitute the touchstones of penal administration.[13] Multiple goals are encompassed within these broad constitutional standards. Within the ambit of this constitutional phraseology are found the objectives of rehabilitation of the offender into a noncriminal member of society, isolation of the offender from society to prevent criminal conduct during the period of confinement, deterrence of the offender himself after his release from confinement or other penological treatment, as well as deterrence of other members of the community who might possess tendencies toward criminal conduct similar to that of the offender, and community condemnation of the individual offender, or in other words, reaffirmation of societal norms for the purpose of maintaining respect for the norms themselves.[14]

In Faulkner v. State,[15] it was said, determination of an appropriate sentence involves the judicious balancing of many and ofttimes competing factors * * * [of which] primacy cannot be ascribed to any particular factor.[16]

We now turn to the facts of the case at bar. At the time appellee committed the crimes of forcible rape and robbery, he was an unmarried member of the United States Armed Forces stationed at Fort Richardson, near Anchorage, Alaska.[17] Appellee was born in 1948, the youngest of eight children. His youth was spent on the family's dairy farm in Washington County, Maryland. He played basketball on the Boonsboro High School team, was a member of Future Farmers of America and the Boy Scouts. Appellee did not complete high school, having dropped out one month prior to graduation.[18] After a series of

---

See, State v. Pete, 420 P.2d 338 (Alaska 1966); Battese v. State, 425 P.2d 606 (Alaska 1967); Egelak v. State, 438 P.2d 712 (Alaska 1968).

12. 'In the ABA's Project on Minimum Standards for Criminal Justice, Standards Relating to Appellate Review of Sentences, Standard 3.1, 49–50 (Approved Draft, 1968), while clear recognition is accorded the difficulty of articulating precisely the proper role of reviewing courts in sentencing appeals, it is suggested that

> respect for the discretion of the trial judge should not prevent the reviewing court from making its own inquiry into the justice of the sentence before it. Having made that inquiry, the reviewing court, to be sure, should not 'tinker' with the sentence. Still, the point remains that an independent examination of the justice of the particular sentence is necessary in order for the review process to properly function.

See also President's Commission on Law Enforcement and Administration of Justice, Task Force Report: The Courts 26 (1967); President's Commission on Law Enforcement and Administration of Justice, The Challenge of Crime in a Free Society 357–58 (Avon 1968).

13. Alaska Const., art. I, § 12.

14. Appellate Review of Primary Sentencing Decisions: A Connecticut Case Study, 69 Yale L.J. 1454 (1960).

15. 445 P.2d 815, 823 (Alaska 1968).

16. In Bear v. State, 439 P.2d 432, 436 (Alaska 1968) (footnote omitted), we said:

> The determination of the exact period of time that a convicted defendant should serve is basically a sociological problem to be resolved by a careful weighing of the principle of reformation and the need for protecting the public.

In Appellate Review of Primary Sentencing Decisions: A Connecticut Case Study, 69 Yale L.J. 1454 (1960), it is stated in part:

> [T]o determine the appropriate type and degree of sanction to be applied, the sentencing authority must decide which aim is primarily to be implemented and the relative weight to be assigned to secondary aims.

17. Appellee's commanding officer stated, prior to sentencing, that appellee was an excellent soldier, takes orders well, and was on the promotion list before his crimes.

18. Appellee asserts he was forced to take this action because his father needed his help on the family dairy farm.

varying types of employment, appellee was drafted into the United States Army in 1968. At sentencing, it was disclosed that appellee did not have any prior criminal record, was not a user of drugs, and was only a social drinker.

From the record that has been furnished, it appears that appellee and a companion picked up the prosecutrix at a downtown location in Anchorage. After driving the victim around in their car, appellee and his companion beat her and forcibly raped her four times.[19] During this same period of time, the victim's money was removed from her purse. Upon completion of these events, the prosecutrix was permitted to leave the vehicle to the accompaniment of dire threats of reprisals if she attempted to report the incident to the police.

The presentence report which was furnished to the trial court prior to sentencing contains appellee's version of the rapes. According to appellee, he felt "that it wasn't rape as forcible and against her will on my part." As to his conviction of robbery, appellee states: "I found the money on the floor of the car afterwards and was planning on giving it back, but didn't get to see the girl." At the time of sentencing, appellee told the court that he "didn't direct any violence against the girl."

The Division of Corrections, in its presentence report, recommended appellee be incarcerated and parole be denied. The assistant district attorney who appeared for the state at the time of sentencing recommended that appellee receive concurrent seven-year sentences with two years suspended on the two rape convictions, and that the appellee be sentenced to a consecutive five-year term of imprisonment on the robbery conviction, and that this sentence be suspended and appellee be placed on probation during this period of time.[20] At the time of sentencing, a representative of the Division of Corrections recommended that appellee serve two years on each of the rape convictions and that appellee be sentenced to two years suspended with probation as to the robbery conviction. In his opinion, there was "an excellent possibility of * * early parole." Counsel for appellee concurred in the Division of Corrections' recommendation. As was indicated at the outset, the trial court imposed concurrent one-year terms of imprisonment and provided for parole at the discretion of the parole board.[21] The trial judge further recommended that appellee be placed in a minimum security facility.

In imposing this sentence, the trial judge remarked that he was "sorry that the [mili-

---

19. The prosecutrix was also forced to perform an act of fellatio with appellee's companion.

20. After the state made its recommendation, the following transpired:

THE COURT: I wish Mr. Tobey were—were here. I would like to find out * * * why he makes that particular recommendation and I presume you don't know?

MR. FELTON: No, Your Honor, this is what I tried to explain to the Court earlier, why the—defense counsel may specifically request Mr. Tobey's presence rather than my own.

MR. KERNAN [trial counsel for appellee]: I was not aware, Your Honor, that Mr. Tobey would be unavailable and * * * since this is—I believe the sentence that's been recommended * * * it is a very vindictive sentence. * * * Under the circum-

stances of this case, I would like to have Mr. Tobey here to explain his reasoning.

&ast; &ast; &ast; &ast; &ast;

THE COURT: * * * I suppose everybody else being here, we might as well go ahead and pass the sentence. * * *

&ast; &ast; &ast; &ast; &ast;

MR. FELTON: I think, Your Honor, that primarily the State was concerned—or appalled by the—the apparent violence involved in this thing. I think this is probably the major reason that Mr. Tobey recommended these things that he's indicated to me, Your Honor.

21. These were minimum sentences under the applicable statutes. Rape carries a potential range of imprisonment from 1 to 20 years while a conviction of robbery can result in imprisonment from 1 to 15 years.

tary] regulations would not permit keeping [appellee] * * * in the service if he wanted to stay because it seems to me that is * * * a better setup for everybody concerned than putting him in the penitentiary." [22] At a later point in his remarks, the trial judge said:

Now as a matter of fact, I have sentenced you to a minimum on all 3 counts here but there will be no problem as far as I'm concerned for you to be paroled at the first day, the Parole Board says that your're eligible for parole. * * * [If] the Parole Board should decide 10 days from now that you're eligible for parole and parole you, it's entirely satisfactory with the court. [23]

Exercising the appellate jurisdiction vested in this court by virtue of the provisions of AS 12.55.120(b), we express our disapproval of the sentence which was imposed by the trial court in the case at bar. In our opinion, the sentence was too lenient considering the circumstances surrounding the commission of these crimes. It further appears that several significant goals of our system of penal justice were accorded little or no weight by the sentencing court.

Forcible rape and robbery rank among the most serious crimes. In the case at bar, the record reflects that the trial judge explicitly stated, on several occasions, that he disbelieved appellee and believed the prosecutrix's version of what happened after she entered the vehicle which was occupied by appellee and his companion. Considering both the jury's and the trial judge's resolution of this issue of credibility, and the violent circumstances surrounding the commission of these dangerous crimes, we have difficulty in understanding why one-year concurrent sentences were thought appropriate.

Review of the sentencing proceedings leads to the impression that the trial judge was apologetic in regard to his decision to impose a sanction of incarceration. Much was made of appellee's fine military record and his potential eligibility for early parole. [24] On the one hand, the record is devoid of any trace of remorse on appellee's part. Seemingly all but forgotten in the sentencing proceedings is the victim of appellee's rapes and robbery. On the other hand, the record discloses that the trial judge properly considered the mitigating circumstance that the prosecutrix, who at

22. Collateral consequences flowing from an accused's convicton may be considered by the trial judge in arriving at an appropriate sentence. In addition to giving weight to the fact that military regulations prohibited appellee's retention in the service, the record further indicates that the trial judge also took into consideration the fact that appellee's conviction would result in his receiving an undesirable discharge from the military service.

23. Supreme Ct.R. 21(f) requires that:
At the time of imposition of sentence the judge shall make a statement on the record explaining his reasons for imposition of the sentence.
The ABA recommends that when sentence is imposed the court
normally should state for the record in the presence of the defendant the reasons for selecting the particular sentence to be imposed. In the exceptional cases where the court deems it in the best interests of the defendant not to state fully in his presence the rea-

sons for the sentence, the court should prepare such a statement for inclusion in the record. * * *
The basic reasons for this requirement are that a statement of the reasons by the sentencing judge should greatly increase the rationality of sentences, such a statement can be of therapeutic value to the defendant, and the statement can be of significance to an appellate court faced with the prospect of reviewing the sentence.
ABA Project on Minimum Standards for Criminal Justice, Sentencing Alternatives and Procedures, Standard 5.6(ii) 269, 270–71 (Approved Draft, 1968).

24. A military spokesman represented to the sentencing court that:
An occurrence such as the one concerned is very common and happens many times each night in Anchorage. Needless to say, Donald Chaney was the unlucky 'G.I.' that picked a young lady who told.

the time did not know either appellee or his companion, voluntarily entered appellee's car. But the crux of our disapproval of the sentence stems from what we consider to be the trial judge's de-emphasis of several important goals of criminal justice.

In view of the circumstances of this record, we think the sentence imposed is not well calculated to achieve the objective of reformation of the accused. Considering the apologetic tone of the sentencing proceedings, the court's endorsement of an extremely early parole, and the concurrent minimum sentences which were imposed for these three serious felonies, we fail to discern how the objective of reformation was effectuated. At most, appellee was told that he was only technically guilty and minimally blameworthy, all of which minimized the possibility of appellee's comprehending the wrongfulness of his conduct.

We also think that the sentence imposed falls short of effectuating the goal of community condemnation, or the reaffirmation of societal norms for the purpose of maintaining respect for the norms themselves. In short, knowledge of the calculated circumstances involved in the commission of these felonies and the sentence imposed could lead to the conclusion that forcible rape and robbery are not reflective of serious antisocial conduct. Thus, respect for society's condemnation of forcible rape and robbery is eroded and reaffirmation of these societal norms negated.[25]

We believe that a concurrent sentence calling for a substantially longer period of incarceration on each count was appropriate in light of the particular facts of this record and the goals of penal administration. A sentence of imprisonment for a substantially longer period of imprisonment than the one-year sentence which was im-

posed would unequivocally bring home to appellee the seriousness of his dangerously unlawful conduct, would reaffirm society's condemnation of forcible rape and robbery, and would provide the Division of Corrections of the State of Alaska with the opportunity of determining whether appellee required any special treatment prior to his return to society.[26]

---

25. We also doubt whether the sentence in the case at bar mitigates the persistent problem of disparity in sentences. What is sought is reasonable differentiation among sentences.

26. Operation of our system of penal administration in Alaska is dependent upon

a properly staffed and functioning Division of Corrections which has, in addition to probation and parole functions, the responsibility for treatment, rehabilitation, and custody of incarcerated offenders.