William H. ROEHL, Appellant,

v.

STATE of Alaska, Appellee.

No. 1975.

Supreme Court of Alaska.

May 13, 1974.

Herbert D. Soll, Public Defender, Lawrence J. Kulik, Asst. Public Defender, Anchorage, for appellant.

John E. Havelock, Atty. Gen., Juneau, Joseph D. Balfe, Dist. Atty., Stephen G. Dunning, Asst. Dist. Atty., Anchorage, for appellee.

Before RABINOWITZ, Chief Justice, and CONNOR, ERWIN, BOOCHEVER and FITZGERALD, Justices.

## OPINION

RABINOWITZ, Chief Justice.

Appellant William H. Roehl was indicted on two counts of robbery and separate counts of kidnapping, arson, and malicious injury to personal property. Upon his pleas of guilty to the two counts of robbery, the superior court imposed concurrent six-year sentences of imprisonment and provided that Roehl would be required to serve two years before becoming eligible for parole.[1]

In this appeal counsel for Roehl argues that the sentence imposed by the superior court should be modified "at least to the extent that [Roehl] be eligible for parole at the discretion of the parole board." Counsel contends that modification of Roehl's sentence is indicated in light of Roehl's youth, his history of psychiatric and alcohol related problems, and the

availability of psychiatric counseling. The state in its brief points to the fact that Roehl does not contend that the superior court was "clearly mistaken" in imposing the sentence it did. The state contends that Roehl in effect is asking this court to substitute its judgment for that of the trial court in what would in effect be the equivalent of a Criminal Rule 35(a) decision.[2] The state further argues that the sentence is fully justified under the standards enunciated by this court in State v. Chaney, 477 P.2d 441 (Alaska 1970).

In the case at bar, the superior court conducted a very thorough sentencing hearing at which witnesses in behalf of Roehl, as well as the two victims of the robberies in question, testified. In addition to this testimony at the sentencing hearing, the trial judge had the benefit of transcripts of the preliminary hearing and the grand jury proceeding, and also a full presentence report, together with psychiatric and psychological reports. Factually, the record discloses that Roehl and a youthful companion, over the span of a few hours, engaged in a course of conduct which involved a high degree of risk to the personal safety of others, as well as the destruction of personal property.

The short-lived episode of anti-social conduct of Roehl and his companion began with the commandeering of Karl Westfall's car at gun point and knife point. There followed a high speed excursion on the highway; a stop during which Roehl ordered Westfall out of the vehicle and, pointing a gun at Westfall, ordered him to start walking towards the woods; a change of plans on Roehl's part; and Westfall's eventual escape when Roehl stopped for gas. After Westfall's escape, Roehl and his companion drove off at a high rate of speed.

---

1. At the time the guilty pleas were entered and accepted by the superior court, the district attorney's motion to dismiss the remaining three counts of the indictment was granted.

2. Crim.R. 35(a) permits the trial court, within 60 days of imposition of sentence, to modify the sentence.

Bernard Toohey observed the Westfall vehicle in flames later that morning and shortly thereafter saw Roehl and his companion walking along the highway. Toohey attempted to effectuate a citizen's arrest of the two young men, but Roehl's companion threatened Toohey with a pistol and the two commandeered Toohey's pickup. Toohey notified the Alaska State troopers who, after a high speed chase and damage to both Toohey's vehicle and the troopers' vehicle, forced Roehl and his companion to drive off the highway.

The psychiatric report which was filed in the case indicated that Roehl was not, at the times in question, suffering from a mental illness which prevented him from conforming his conduct to legal norms. Dr. J. Ray Langdon stated that, in his opinion, Roehl possessed a "passive aggressive personality, without evidence of organic changes," and that Roehl was a poor candidate for probation.

A similar conclusion was reached by the author of Roehl's presentence report. In his report, the probation officer recommended denial of probation, three-year concurrent sentences with parole eligibility fixed at two years, and individual psychotherapy treatment.

In stating his reasons why he believed the six-year concurrent sentences with eligibility for parole fixed at two years were appropriate, the trial judge observed that although Roehl was under the influence of liquor at the time the robberies were committed, this was a case of voluntary intoxication which did not impair Roehl's "ability in a substantial degree to conform his conduct to the requirements of society and that it should serve as little or no excuse for the acts he committed." The trial judge also found that Roehl was a willing participant in the robberies and should be regarded in all respects as a principal.[3] Noting Roehl's total disregard for the rights and safety of others, the serious nature of the offenses, and the need to both isolate Roehl as a dangerous offender and to bring home to him the seriousness of his anti-social conduct, the superior court concluded, under the criteria of Chaney, that concurrent six-year sentences with eligibility for parole fixed after service of two years' imprisonment were proper sentences.[4]

We agree with the lower court. Under the "clearly mistaken" standard of review first articulated in Chaney, we are not persuaded that the sentence imposed was excessive, and therefore do not believe that the superior court's sentence should be modified in any respect. The record shows that the superior court conducted the sentencing proceeding with a high degree of care and thoughtfulness. Study of the record convinces us that the goals of penal administration in the State of Alas-

---

3. In this regard, the trial court specifically rejected the testimony of Roehl's companion given at the sentencing hearing regarding the purported minor role of Roehl in the events in question. Characterizing the companion's testimony as something derived from Alice In Wonderland, the trial judge chose to believe Westfall's and Toohey's version of Roehl's part in the robberies.

At the time the robberies were committed and at the time of the sentencing proceeding, Roehl's companion was a juvenile, approximately 17 years of age.

4. In State v. Chaney, 477 P.2d 441, 444 (Alaska 1970), we said:

Multiple goals are encompassed within these broad constitutional standards. Within the ambit of this constitutional phraseology are found the objectives of rehabilitation of the offender into a noncriminal member of society, isolation of the offender from society to prevent criminal conduct during the period of confinement, deterrence of the offender himself after his release from confinement or other penological treatment, as well as deterrence of other members of the community who might possess tendencies toward criminal conduct similar to that of the offender, and community condemnation of the individual offender, or in other words, reaffirmation of societal norms for the purpose of maintaining respect for the norms themselves. (footnote omitted)

ka, as articulated in *Chaney*, were furthered by the sentence imposed in the instant case.[5] Given the seriousness of the crimes committed by Roehl and the sentencing data which was provided the superior court, we affirm the sentences which were imposed.

Affirmed.

5. In State v. Chaney, 477 P.2d at 443–444, we said:

When a sentence is appealed, we will make our own examination of the record and will modify the sentence if we are convinced that the sentencing court was clearly mistaken in imposing the sanction it did. (footnote omitted)

*See also* McClain v. State, 519 P.2d 811 (Alaska 1974) ; Avery v. State, 514 P.2d 637, 646 (Alaska 1973) ; Stevens v. State, 514 P.2d 3, 6 (Alaska 1973) ; Johnson v. State, 511 P.2d 118, 126 (Alaska 1973) ; Asitonia v. State, 508 P.2d 1023 (Alaska 1973).