566 P.2d 267 (1977)
STATE of Alaska, Appellant,
v.
Mickey ABRAHAM, Appellee.
No. 3171.
Supreme Court of Alaska.
June 8, 1977.
Victor C. Krumm, Asst. Dist. Atty., Bethel, Joseph D. Balfe, Dist. Atty., Anchorage, Avrum M. Gross, Atty. Gen., Juneau, for appellant.
Myron Angstman, Asst. Public Defender, Bethel, Brian Shortell, Public Defender, Anchorage, for appellee.
Before BOOCHEVER, C.J., RABINOWITZ, CONNOR and BURKE, JJ., and DIMOND, J., Pro Tem.

OPINION
RABINOWITZ, Justice.
The State of Alaska brings this sentence appeal from a judgment and order of probation which was entered by the superior court.[1] Mickey Abraham was indicted for the crime of manslaughter in violation of *268 AS 11.15.040.[2] The indictment alleged, in part, that Mickey Abraham "did unlawfully and feloniously kill one Sophie Abraham by beating and injuring her about the head and body and thereby causing her death." Trial was commenced in Bethel before Judge James A. Hanson but due to difficulties encountered in empaneling a petit jury, venue was changed to Anchorage. Thereafter, Mickey Abraham entered a plea of nolo contendere to the charge of manslaughter before Judge Edward V. Davis. After a presentence investigation was conducted and presentence reports filed, appellee Abraham was sentenced by Judge Hanson to 5 years imprisonment with 4 years suspended. During the 4-year period, Abraham was placed on probation subject to certain conditions, one of which was that he totally refrain from the consumption of alcoholic beverages. The superior court further ordered that Abraham was to be considered ineligible for parole during the entire 1-year period of imprisonment.
In this sentence appeal the state takes the position that the superior court's sentence was too lenient in light of the nature and circumstances surrounding the commission of the homicide, Mickey Abraham's past history of violence and physical harm to others while intoxicated, and the need to give appropriate weight to the sentencing goals of deterrence and maintenance of respect for the law's prohibitions against the taking of a human life. Before explaining our reasons why we believe the sentence in the case at bar is too lenient, we think it appropriate to discuss several aspects of both the sentencing proceedings and the events which formed the prelude to Abraham's decision to enter a guilty plea.[3]
We first address the sentencing proceedings. In Nattrass v. State, 554 P.2d 399, 402 (Alaska 1976), this court stated:
We consider this an appropriate occasion to remind the trial courts of Alaska of the importance of the defendant's right of allocution. In order to ensure that this right is implemented, the sentencing court must comply with the requirements of Criminal Rule 32(a) and unequivocally bring home to the defendant that he has the right to make a statement in his own behalf and to present any information in mitigation of punishment.[4] (footnote omitted)
The record we have in the instant case fails to disclose that the superior court complied with Criminal Rule 32(a) by affording Mickey Abraham the opportunity to make a statement in his own behalf.[5] We therefore consider this an appropriate occasion to remind Alaska's sentencing courts that Criminal Rule 32(a) must be complied with in the course of fulfilling their sentencing functions.
We next turn to the proceedings which preceded the sentencing hearing and the superior court's imposition of sentence. During the sentencing hearing, counsel for Abraham remarked:
This case has been discussed very extensively off the record in chambers and the thoughts of all 3 parties to this sentencing operation have been expressed time and again in chambers and I'm not going to bore the court rehashing many of the things I've suggested in chambers before simply because I know the court is aware *269 of them and I know the court is taking them into consideration... .[6]
In our recent opinion in State v. Buckalew, 561 P.2d 289 (Alaska 1977), this court took note of the grave problems the absence of a record can generate and commented:
We recognize that it is a common practice in the trial courts to conduct informal conferences in chambers. So long as all parties are in attendance or adequately represented, so as to avoid improper ex parte communications, there is nothing wrong with this practice... . Nevertheless, in most cases a record should be made of such conferences.[7]
The fact that extensive unrecorded in-chambers conferences were held in the case at bar could have had potentially serious repercussions. The record discloses that during the early stages of the abortive attempt to empanel a jury, the superior court advised respective counsel in chambers that if the defendant entered a guilty plea he would receive a maximum sentence of 5 years. The record further reflects that the next day the court advised the respective counsel, again in chambers, that Abraham could expect a sentence of no more than one year unless new facts came to the court's attention. At the sentencing hearing the superior court alluded to these discussions.[8] More particularly, the court stated:
I'm afraid this record is going to reflect  and there's not one thing I can do about it  that I was attempting to get Mr. Abraham to plead guilty by reducing whatever thoughts I had from 5 to one. I don't remember having done that. I certainly don't deny it. Both counsel remember it. I do not.
On the very day that the sentencing proceedings were held in the case at bar, this court handed down its decision in State v. Carlson, 555 P.2d 269 (Alaska 1976). There we granted a writ of prohibition barring the superior court from accepting a plea of guilty to the crime of manslaughter. Our decision was based, in part, on the fact that the trial judge had engaged in plea bargaining. In State v. Carlson, we said:
We are also concerned that a judge's involvement as plea negotiator would detract from the judge's neutrality, and would present a danger of unintentional coercion of defendants who could only view with concern the judge's participation as a state agent in the negotiating process.[9] (citation omitted)
*270 More recently in State v. Buckalew, 561 P.2d at 292, we concluded that "henceforth Alaska's trial judges shall be totally barred from engaging in either charge or sentencing bargaining."[10] The instant record affords an apt occasion to reiterate the judicial plea bargaining bar enunciated in State v. Buckalew.[11]
We now turn to the only question in this appeal which has been presented in an adversary fashion, namely, whether the superior court's sentence of 5 years with 4 suspended for the crime of manslaughter was too lenient when measured by our review standard of "clearly mistaken."[12] In regard to the legislature's grant of appellate jurisdiction providing for review of lawful sentences,[13] we said in State v. Chaney, 477 P.2d 441, 443-44 (Alaska 1970):
As we interpret this legislative enactment, it is our duty to examine the proceedings below to review for excessiveness or leniency the sentence imposed by the trial court, in light of the nature of the crime, the defendant's character, and the need for protecting the public...
... When a sentence is appealed, we will make our own examination of the record and will modify the sentence if we are convinced that the sentencing court was clearly mistaken in imposing the sanction it did. (footnote omitted)
The record we do have shows that Mickey Abraham was born in 1918 in the village of Chefornak in southwest Alaska. He spent most of his early life in the village of Nightmute, leaving in 1946 to find employment in Bethel. While in Nightmute, he married Sophie Abraham and of this marriage 8 children were born.[14] Mickey Abraham was described by his son Andrew as a traditional Yupik speaking Eskimo man who has spent his entire life in southwest Alaska.[15] Review of this matter further discloses that Mickey Abraham has two prior convictions, one for assault and battery committed upon Sophie Abraham in 1971, and another for the offense of possession of *271 a firearm while intoxicated, a violation of AS 11.55.070.[16]
Concerning the homicide in question, the record shows that Sophie Abraham slept in an old car in front of a neighbor's residence the night before she met her death. There was testimony to the effect that she had previously slept in this vehicle whenever she was in fear of being beaten by Mickey. The autopsy report reveals that she died as a result of a vicious beating.
In explaining the sentence it imposed, the superior court made the following observations:
First, I do consider what the community reaction is to any offense... . [T]he defendant needs for his own purposes  if for no other  alcohol rehabilitation, and that those rehabilitative facilities  resources are not available in the Bethel area. Secondly, I think it's important to note that while I'm certainly not licensing people to beat up on their own family members and particularly on spouses, it's important to note in this case that Mr. Abraham has never been in any way that I have been able to determine a hazard to anyone other than those people that he loves. He's not apparently that I can see a danger to society at large in any way... . I'm satisfied from jury selection, from the testimony, from everything, that it was a well known fact that Mickey Abraham beat on his wife a great deal of the time. ... I think this record will reflect  throughout has held quite an impact on me as I've watched him in court and there isn't any question that he's suffering more agony over the death of his wife that we can realize.[17] (emphasis added)
Admittedly, the death of Sophie Abraham has resulted in tragic consequences not only for her children but also for Mickey Abraham. The record is demonstrative of the unfortunately all too frequent disastrous impact that alcohol has upon the lives of some individuals living in rural areas of Alaska. Nevertheless, we are constrained to voice our disapproval of the sentence that the superior court fashioned in this case. We do so because we have concluded that approval of the superior court's sentence in the case at bar would denigrate human life and would be contrary to several of the sentencing goals which we first articulated in State v. Chaney, 477 P.2d 441 (Alaska 1970).
Our conclusion that the superior court's sentence is too lenient was reached upon consideration of a number of factors which we deem particularly significant. Homicide, being a most serious crime, normally calls for the imposition of significant sanctions.[18] Here we consider it highly relevant that Mickey Abraham has acquired a lengthy history of violent conduct whenever intoxicated which culminated in the beating in which he caused his wife's death. Given this propensity, we think it inescapable that the superior court's sentence will in fact be interpreted as "licensing people to beat up on their own family members and particularly on spouses."
In State v. Chaney, 477 P.2d 441, 443 (Alaska 1970), we held, in part, that appropriate goals of sentencing are deterrence of the offender and of other members of the community who might possess similar criminal tendencies, and reaffirmation of societal norms. In our view, these particular goals were accorded insufficient weight by the superior court in sentencing the defendant. Given the slim probability that Mickey *272 Abraham will be successfully treated for his alcohol problems during the 1-year period of incarceration he is required to serve and his history of alcohol-related violence, we think that a minimal protection of society requires that he be given a more substantial sentence.[19]
We are of the further belief that a sentence of 1-year confinement for the taking of a human life in a most brutal manner does not serve to effectuate the goals of deterrence and respect for the laws of Alaska. Granted Mickey Abraham is somewhat advanced in years and probably will have difficulty adjusting to prison life,[20] nevertheless, members of his family, as well as society in general, are entitled to the full protection of Alaska's laws.
ERWIN, J., not participating.
NOTES
[1] AS 12.55.120(b) provides:

A sentence of imprisonment lawfully imposed by the superior court may be appealed to the supreme court by the state on the ground that the sentence is too lenient; however, when a sentence is appealed by the state and the defendant has not appealed the sentence, the court is not authorized to increase the sentence but may express its approval or disapproval of the sentence and its reasons in a written opinion.
In the case at bar the defendant has not appealed from the sentence which was imposed by the superior court or attacked the entry of his plea of nolo contendere. Our review of the record has convinced us that the appeal presents an appropriate occasion for this court to express its approval or disapproval of the superior court's sentence.
[2] AS 11.15.040 reads, in part:

[A] person, who unlawfully kills another is guilty of manslaughter, and is punishable by imprisonment in the penitentiary for not less than one year nor more than 20 years.
[3] In State v. Chaney, 477 P.2d 441, 443 (Alaska 1970), it was stated, in part, that in carrying out our authority to review criminal sentences "[w]e are also obliged to consider the manner in which the sentence was imposed... ."
[4] Criminal Rule 32(a) states, in part:

Before imposing sentence the court shall afford the defendant an opportunity to make a statement in his own behalf and to present any information in mitigation of punishment.
[5] Mickey Abraham, who was 58 at the time the sentencing proceedings were held, spoke and understood essentially only the Yupik dialect of Eskimo language and had only minimal ability to speak and comprehend the English language. Nevertheless, if he had elected to exercise his right of allocution, he could have done so since an interpreter was present at all stages of the sentencing proceedings.
[6] In response to defense counsel's remarks, the court replied, "On the other hand, make sure that anything that isn't within this record somewhere gets on the record."
[7] State v. Buckalew, 561 P.2d 289, 293 (Alaska 1977). In our opinion in that case, we called the attention of the trial bench and bar to the provisions of Rule 25, Rules Governing the Administration of All Courts. Rule 25 provides:

So far as practical, all judicial business involving the trial of causes and conferences with members of the Bar or litigants shall be transacted in open court.
[8] In this regard, the record shows that the court stated:

I should state that my recollections are somewhat hazy and I'm a little disturbed either with myself or with the system. You'd normally make notes and insert them in the file when we have such discussions. I remember the discussion as to what would be the consequence. I am certain that I would have said that it makes not one scintilla [of] difference to me whether he pleads or is found guilty... .
[9] State v. Carlson, 555 P.2d 269, 272 (Alaska 1976).

In the case at bar the sentencing court recognized the coercive impact of judicial plea bargaining, stating, "If plea bargaining, however conducted, has a coercive effect, then I'm opposed to it also." Further, the superior court was of the view that any intimations it conveyed to counsel regarding the sentence it would impose upon a plea were not designed to induce a plea. In this regard, the trial court stated:
So I don't know why I came from 5 to one, but I will state for the record, it surely was not devised to induce plea. As I recall, we had agreed that ... was at that time reasonably certain that nothing his counsel could say to him would get him to change his plea. He had earlier indicated ... he wanted to plead guilty and then he withdrew that plea. The matter, to my knowledge at the time of the latter discussion, was going to Anchorage for trial before .. . some judge in the Anchorage court.
[10] In State v. Buckalew, we were presented with the factual context of an off-the-record in-chambers conference during which the court, in part, informed respective counsel and the defendant that if the defendant changed his plea he could probably expect a maximum sentence of 90 days incarceration.
[11] We think the following remarks of counsel for the state, made at the sentencing hearing, illustrate part of the rationale underlying our conclusion that the sentencing court should totally refrain from participating in either charge or sentence bargaining. In the course of alluding to the two occasions in which the court advised counsel as to the sentence Mr. Abraham could expect if he changed his plea, counsel for the state remarked:

But secondly, it has the effect of coercing the defendant into doing something that he may not have wanted to do, and that is, I think [defense counsel] has stated quite convincingly that he spent hours telling the defendant you're not going to die in jail, the maximum you're going to get is one year. He has indicated several times to me, he's indicated to the court that one of the main problems that Mr. Abraham has had in entering a plea in this case is a fear, an absolute fear of jail, he does not want to go to jail for any length of time, and especially a long length of time, because he fears dying in jail.... I would ask that ... we take notice at this time that from a policy position, it is  it seems regrettable to have plea bargaining go on  or sentence bargaining in a situation like this where we have a defendant who's not particularly fluent in the English language. I don't know what caused him to do it but it strikes me that one of the reasons that he pled was because he was afraid of being sentenced in front of a different judge at this time.
[12] In State v. Chaney, 477 P.2d 441, 444 (Alaska 1970), we stated that we will modify a challenged sentence only "if we are convinced that the sentencing court was clearly mistaken in imposing the sanction it did." See also Thurlkill v. State, 551 P.2d 541, 547 (Alaska 1976); Bailey v. State, 548 P.2d 373, 375 (Alaska 1976); Bradley v. State, 535 P.2d 1031, 1032 (Alaska 1975).
[13] See note 1, supra, for the text of AS 12.55.120(b).
[14] From the record it appears that only two of the eight children are still minors. One child is in the custody of the Department of Health and Social Services and the youngest is attending school in Anchorage.
[15] From the record we glean that Mickey Abraham is a skilled carpenter and cabinet maker.
[16] It was during this latter episode that Mickey accidentally shot one of his sons.
[17] The court further observed:

I do not think that Mr. Abraham  unless he can somehow be made to stop drinking for the rest of his life  is going to otherwise be rehabilitated by a jail sentence. He's not a criminal in the sense that he preys on people for profit and that sort of thing. If there is something that can be done during the year of Mr. Abraham's incarceration to stop him from drinking, that will be good for him. I don't think he is now or ever has been a danger to the public at large.
[18] See Erwin, Five Years of Sentence Review in Alaska, 5 U.C.L.A.  Alaska L.Rev. 1, 5-6 (1975), for an analysis of the homicide cases this court has reviewed.
[19] In Andrews v. State, 552 P.2d 150, 152 (Alaska 1976), we said:

We are obligated to consider the entire sentence which the superior court imposed. That is, in determining whether a given sentence is excessive or overly lenient, we will consider the total sentence entered including any period of suspension or deferred imposition.
[20] In addition to linguistic barriers, the record shows that Mickey Abraham maintains a diet which consists primarily of traditional Eskimo foods.