**Mickey ABRAHAM, Appellant,**

v.

**STATE of Alaska, Appellee.**

**No. 3407.**

Supreme Court of Alaska.

Oct. 13, 1978.

---

1. On all other issues, I concur.

Allan Beiswenger, Asst. Public Defender, Bethel, and Brian Shortell, Public Defender, Anchorage, for appellant.

Victor C. Krumm, Dist. Atty. and Norman A. Cohen, Legal Intern, Bethel, and Avrum M. Gross, Atty. Gen., Juneau, for appellee.

Before BOOCHEVER, Chief Justice, RABINOWITZ, BURKE and MATTHEWS, Justices, and DIMOND, Senior Justice.

## OPINION

DIMOND, Senior Justice.

In a drunken rage, Mickey Abraham beat his wife to death. He entered a plea of nolo contendere to the charge of manslaughter and was sentenced to five years imprisonment with four years suspended. The court ordered that Abraham was to be considered ineligible for parole during the one-year period of imprisonment. During the four-year period of suspended sentence, he was placed on probation, subject to certain conditions, one of which was that he totally refrain from consuming alcoholic beverages.

The state appealed to this court on the basis that the sentence was too lenient.[1]

---

1. AS 12.55.120(b) provides:

A sentence of imprisonment lawfully imposed by the superior court may be appealed to the supreme court by the state on the ground that the sentence is too lenient; however, when a sentence is appealed by the

We agreed with the state's contention, stating that the superior court, in sentencing Abraham, had accorded insufficient weight to the sentencing goals of deterrence of the offender and of other members of the community who might possess similar criminal tendencies, and reaffirmation of societal norms. We held that a minimal protection of society required that Abraham be given a more substantial sentence, and that "a sentence of 1-year confinement for the taking of a human life in a most brutal manner does not serve to effectuate the goals of deterrence and respect for the laws of Alaska."[2]

On November 12, 1976, prior to the date of our decision on the state's sentence appeal,[3] Abraham filed with the superior court under Criminal Rules 35(a) and 35(b)(1)[4] an application for correction of the sentence which had been imposed. Abraham asserted (1) that the sentence imposed constituted cruel and unusual punishment under the United States and Alaska Constitutions,[5] and (2) that it violated his constitutional right to reformation.[6] The basis for the first contention was that he spoke only the Eskimo Yupik language, lived in a traditional native style, and ate only a native diet. Thus, Abraham asserted that any incarceration outside of Bethel, a municipality inhabited mostly by Eskimos, would result in cruel and unusual punishment because (a) he would be in virtual isolation, as he could not communicate with other prisoners or the staff; (b) he would be unable to participate in any programs offered in the facility; and (c) he would be deprived of his natural diet. The basis for Abraham's second contention, that his right to reformation would be violated, was that he needed alcoholic rehabilitation, which could not be provided to him within the existing prison programs since he spoke only the Yupik language and there are no alcohol rehabilitation programs for such people.

On December 14, 1976, Judge Hanson summarily denied Abraham's application, without stating any reasons for such action. Under Criminal Rule 35(j) Abraham had 40 days from December 14, 1976, within which to appeal Judge Hanson's denial of his application to correct sentence. No appeal was taken within that time. Instead, Abraham filed a "Supplemental Application for Correction of Sentence" on December 23, 1976. Here, he requested the court to reconsider the denial of the original application. In addition, Abraham asserted that prior to entry of his plea of nolo contendere, Judge Hanson had assured him that he would receive a sentence of no greater than one year and that the judge had imposed, instead, a greater sentence, i. e., five years, with four years suspended.[7] In addition,

state and the defendant has not appealed the sentence, the court is not authorized to increase the sentence but may express its approval or disapproval of the sentence and its reasons in a written opinion.

2. *State v. Abraham*, 566 P.2d 267, 272 (Alaska 1977).

3. The date of that decision was June 8, 1977.

4. Crim.R. 35(a) provides:
The court may correct an illegal sentence at any time. The court may reduce a sentence within 60 days after the sentence is imposed, or within 60 days after receipt by the court of a mandate issued upon affirmance of the judgment or dismissal of the appeal, or within 60 days after receipt of an order of the supreme court of the state or of the United States denying an application for relief.

Crim.R. 35(b)(1) provides:
Any person who has been convicted of, or sentenced for, a crime and who claims:
(1) that the conviction or the sentence was in violation of the constitution of the United States or the constitution or laws of Alaska; . . . may institute a proceeding under this rule to secure relief.

5. U.S.Const. amend. VIII; Alaska Const. art. I, § 12.

6. Alaska Const. art. I, § 12.

7. In *Nattrass v. State*, 554 P.2d 399, 401 (Alaska 1976), *quoting, Andrews v. State*, 552 P.2d 150, 152 (Alaska 1976), we held, with respect to sentence appeals, that
[I]n determining whether a given sentence is excessive or overly lenient, we will consider the total sentence entered including any period of suspension or deferred imposition.

Abraham challenged Judge Hanson for cause on the ground that he would be a material witness if Abraham's motion for reconsideration were granted. Judge Van Hoomissen granted the challenge for cause, and the case was assigned to Judge Cooke on January 25, 1977. Judge Cooke denied Abraham's Supplemental Application for Correction of Sentence in a memorandum opinion dated February 18, 1977.

On March 9, 1977, Abraham filed a notice of appeal from Judge Hanson's summary denial of his Application for Correction of Sentence and from Judge Cooke's denial of his Supplemental Application for Correction of Sentence. Criminal Rule 35(j) permits one to appeal a final judgment entered under Rule 35 within 40 days of the entry of judgment. Since Abraham's appeal was not taken until March 9, 1977, which was more than 40 days following Judge Hanson's denial of Abraham's Rule 35 motion, the appeal was untimely.

▪ Abraham contends, however, that the filing of his Supplemental Application for Correction of Sentence extended the time for appeal. Criminal Rule 35(h) provides that: "All rules and statutes applicable in civil proceedings, including pre-trial and discovery procedures are available to the parties." Literally, this would mean that a motion for reconsideration under Civil Rule 77(m) would permit the timely filing of Abraham's Supplemental Application for Correction of Sentence, since in

that application he requested reconsideration of Judge Hanson's denial of his original motion. The supplemental application would have been timely since it was filed within ten days from the decision of Judge Hanson.[8] But this would be of little help to Abraham on his appeal. The supplemental application before Judge Cooke was in reality a motion to reconsider Judge Hanson's denial of Abraham's Application to Correct Sentence. But at the time of the motion to reconsider, such motion did not terminate the running of the time for filing an appeal from the order sought to be reconsidered. This is clear from the provisions of Appellate Rule 7(a).[9] What this means, then, is that this appeal from the denial of a motion to reconsider does not bring up for review the final decision of Judge Hanson denying Abraham's Application for Correction of Sentence. As we stated in *Brown v. State*, 563 P.2d 275, 278 (Alaska 1977):

> If the rule were otherwise, one could appeal from a final judgment after the time for filing an appeal had expired by utilizing a motion to reconsider under Civil Rule 77(m), and this would circumvent the rule limiting the time within which appeals may be taken and would frustrate the sound policy of having finality in litigation. [footnote omitted]

▪ Thus, the only order that Abraham's notice of appeal could relate to was Judge Cooke's order denying the subsequent Application for Correction of Sentence since

8. The time for filing a motion to reconsider a decision under Civil Rule 77(m) is ten days from the date of the decision.

9. App.R. 7(a)(1) and (4), as it existed at the time of Abraham's appeal, provided:
(1) *Appeals.* The time within which an appeal may be taken to the supreme court is 30 days from the entry of the judgment appealed from.
Whenever the word "judgment" is used in these rules, it includes an administrative order, unless the context provides otherwise.
. . .
(4) *Motions That Terminate Time For Filing Appeal.* The running of the time for filing an appeal is terminated by a timely motion filed in superior court pursuant to those rules of civil procedure enumerated in this section, and the full time for appeal is computed from

the entry of any of the following orders made on timely motions:
[a] Granting or denying a motion for judgment under Civil Rule 50(b);
[b] Granting or denying a motion to amend or make additional findings of fact under Civil Rule 52(b), whether or not an alteration of the judgment would be required if the motion is granted;
[c] Granting or denying a motion to alter or amend a judgment under Civil Rule 59; or
[d] Denying a new trial under Civil Rule 59.
Effective June 30, 1978, App.R. 7(a)(4) was amended to provide that the running of the time for filing an appeal is also terminated by a timely motion granting or denying a motion to reconsider under Civ.R. 77(m).

that order was entered on February 18, 1977, and the notice of appeal, filed March 9, 1977, was within the 40-day time limit for appeals under Criminal Rule 35(j). But the only question that would be presented by that appeal would be the propriety of the denial of reconsideration and would not bring before this court the merits of the December 14, 1976, order of Judge Hanson denying the Application for Correction of Sentence. *Brown, supra,* at 278.[10]

■ Despite the procedural web which appears to entangle Abraham and block his efforts to have his contentions reviewed by this court, we have the discretionary authority to consider and pass upon the arguments made by him. Appellate Rule 46 provides:

These rules are designed to facilitate business and advance justice. They may be relaxed or dispensed with by this court where a strict adherence to them will work surprise or injustice.

We invoke that rule in this case. A strict adherence to the 40-day rule[11] for appealing Judge Hanson's decision of December 14, 1976, would work an injustice because Abraham's contentions that his conditions

of imprisonment amount to a deprivation of his right to rehabilitation and reformation and his right to be free of cruel and unusual punishment, would never be heard.[12] As we stated in *MgGinnis v. Stevens,* 543 P.2d 1221, 1236 n. 45 (Alaska 1975):

If fundamental constitutional rights are alleged to be abridged in disciplinary proceedings, it would be the duty of the court to inquire into the allegations.

Art. I, § 12 of the Alaska Constitution states in part that: "Penal administration shall be based on the principle of reformation and upon the need for protecting the public." In *State v. Chaney,* 477 P.2d 441 (Alaska 1970), we published our first opinion on sentence review under a statute enacted by the legislature in 1969 and made effective in January, 1970, which conferred sentence review power upon the courts. AS 12.55.120; 22.05.010(a). We stated that one of the objectives of art. I, § 12 of the constitution dealing with penal administration was the "rehabilitation of the offender into a noncriminal member of society."[13] Since our decision in *Chaney,* we have published numerous decisions dealing with review of sentencing.[14] We have repeatedly

---

10. The only new material raised in the supplemental application was Abraham's contention that Judge Hanson, as a part of a plea, charge, and sentence bargaining among the judge, district attorney and defense counsel, had assured Abraham that he would receive a sentence of no greater than one year. Abraham does not raise that point on appeal and states in his brief that "[t]he only portion of defendant's Supplemental Application for Correction of Sentence now before this court is the portion requesting reconsideration of Judge Hanson's action of December 14, 1976." Consequently, we shall not consider that point except to say that judicial participation in charge or sentencing bargaining has been disapproved by this court. *See State v. Buckalew,* 561 P.2d 289, 292 (Alaska 1977); *State v. Carlson,* 555 P.2d 269, 272 (Alaska 1976).

11. Crim.R. 35(j) provides:
A final judgment entered under this rule may be reviewed by the supreme court on appeal brought either by the applicant or the state within 40 days from the entry of judgment.

12. Alaska Const. art. I, § 12 states:
Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted. Penal administration

shall be based on the principle of reformation and upon the need for protecting the public.

13. We also spoke of other objectives. We stated:
. . . Multiple goals are encompassed within these broad constitutional standards. Within the ambit of this constitutional phraseology are found the objectives of rehabilitation of the offender into a noncriminal member of society, isolation of the offender from society to prevent criminal conduct during the period of confinement, deterrence of the offender himself after his release from confinement or other penological treatment, as well as deterrence of other members of the community who might possess tendencies toward criminal conduct similar to that of the offender, and community condemnation of the individual offender, or in other words, reaffirmation of societal norms for the purpose of maintaining respect for the norms themselves.
*State v. Chaney,* 477 P.2d 441, 444 (Alaska 1970).

14. *See* Erwin, *Five Years of Sentence Review in Alaska,* 5 UCLA–Alaska L.Rev. 1 (1975). *See also,* Taylor, *Sentence Review in Alaska:*

required the sentencing judge to consider, on the record, various goals or objectives to be achieved in sentencing, including among other factors the reformation or rehabilitation of the offender.

In addition, the legislature has acted to implement the constitutional provision we are concerned with. AS 33.30.020 requires the Commissioner of Health and Social Services to establish programs for the treatment, care, rehabilitation, and reformation of prisoners, in discharge of the Commissioner's duties to administer all matters affecting prisoners once the court has pronounced sentence.[15]

The constitutional provision we are considering is concerned with penal administration. It provides that such administration shall be based on two factors: (1) the principle of reformation, and (2) the need for protecting the public. It is obvious that one thrust of this constitutional requirement is directed toward the public welfare. Not only does it expressly mention the "protection of the public," but also it is apparent that if the offender is reformed or rehabilitated, this will advance the public interest.

But the public is not the sole beneficiary of this constitutional requirement. The constitution speaks of penal administration being based on the "principle of reformation." Reformation relates to something being done to rehabilitate the offender into a noncriminal member of society. True, society will benefit from this, but so will the offender since, to the extent that he is rehabilitated into a law-abiding person, his inherent dignity as a human being will be enhanced. He will be the object of respect, rather than of fear or loathing by his fellow citizens, and to that extent, will benefit from the sense of personal satisfaction enjoyed by those who live decent lives, unsullied by disobedience and rebellion against

the laws by which we govern ourselves in a peaceful and tranquil society. Thus, there was reason for including the constitutional provision we are considering under art. I of our constitution, which is entitled "Declaration of Rights."

In our recent decision in *Rust v. State*, 582 P.2d 134 (Alaska 1978), we held that a prisoner in Alaska has the right to receive necessary medical services, including psychiatric care, under certain conditions. We based that decision on statutory provisions relating to the medical care of prisoners, and also on the fact that such right of treatment stems from the constitutional prohibition against "cruel and unusual punishment," which language must be interpreted in light of "the evolving standards of decency that mark the progress of a maturing society."[16] But in the *Rust* case we stated in n. 35 that "We have determined that the case at bar does not present an appropriate vehicle for delineation of the contours of a prisoner's right to rehabilitation under either art. I, § 12 of the Alaska Constitution or AS 33.30.020."[17] We pass on that issue in this case because it is squarely before us.

■ The basis for Abraham's claim that his right to rehabilitation is being violated is that any reformation that he needs is alcoholic rehabilitation and this could not be supplied within the existing framework of prison programs. As to his criminal tendencies being related to the consumption of alcohol, the sentencing judge noted:

He's [Abraham] not a criminal in the sense that he preys on people for profit and that sort of thing. If there is something that can be done during the year of Mr. Abraham's incarceration to stop him from drinking, that will be good for him.

---

*The Continuing Controversy*, 6 UCLA–Alaska L.Rev. 129 (1976).

**15.** AS 33.30.020 provides:
   The commissioner shall establish prison facilities and classify the prisoners in prison facilities. He shall provide for the safety, subsistence, proper government, and discipline of prisoners. He shall establish programs for

the treatment, care, rehabilitation and reformation of prisoners.

**16.** *Rust v. State*, 582 P.2d 134, 142 (Alaska 1978), *accord, Trop v. Dulles*, 356 U.S. 86, 101, 78 S.Ct. 590, 598, 2 L.Ed.2d 630, 643 (1958).

**17.** *See* n. 15, *supra*.

Abraham stated in an affidavit that "I have used alcohol regularly for many years." The affidavit of Myron Angstman, Abraham's counsel, stated that "During my period of association with Mr. Abraham, it has become very apparent to me that he has a reliance on alcohol, and is an alcoholic." The probation officer's report prepared for sentencing states on page 4: "it should be noted that he [Abraham] has a drinking problem and when drinking is capable of violant [sic] acts." In a supplemental report to the presentence report on Abraham the following statement is made: "I feel that his recent assaultive behavior is a result of his excessive drinking." From this it appears quite clear that Abraham's criminal behavior is linked to his use or abuse of alcohol.

The ability of the state to provide alcoholic rehabilitation for Abraham was placed in issue by the record. Mr. Angstman's affidavit explored the lack of rehabilitative programs for Yupik-speaking individuals. The record indicates that there are no suitable correctional facilities in Bethel for long-term prisoners who could then receive alcoholic treatment. In addition, the inadequacy of the correctional programs in regards to Yupik-speaking individuals is reflected by Judge Hanson's statement:

I'm also going to—because of my familiarity with the division of corrections—order that no parole be granted during this period. He's to serve the entire year. My experience has been found that if they found him difficult to deal with because he couldn't speak English, they would dump the effort and simply turn him back without attempting (1) rehabilitation or (2) enforcing the intention of the court in imposing the sentence.

It is apparent, then, that the question of the need for and availability of alcoholic rehabilitation was developed as a genuine issue in this case. Judge Hanson's summary denial of Abraham's Application for Correction of Sentence was erroneous because of the existence of such genuine issue of material fact.

In summary, what Abraham is contending on this appeal is that he squarely put into issue in his Application for Correction of Sentence the ability of the state to provide alcoholic rehabilitation. His contention was that he would not receive such rehabilitation under the existing programs for alcoholic rehabilitation of prisoners in Alaska.[18]

We are unable to state that Abraham cannot receive rehabilitative treatment for his problem of alcohol, because no evidentiary hearing was held on his application to correct his sentence.[19] It is apparent to us

18. Cf. *Crowe v. Erickson*, 4 Indian Law Rptr. F–91 (D.S.D. May 4, 1977). In the context of an Agreement in Settlement where one of the points at issue was an alcohol treatment program specifically for Native American inmates, the court observed: "Based on expert consultation the Defendants acknowledge that alcoholism problems of Indians may be more effectively treated by establishing an environment which may foster spiritual and cultural pride in conjunction with an alcoholism treatment program." *Id.* at F–92.

19. In recent years, excessive use of alcohol with its tragic consequences has commanded the attention of the citizens of this state. In 1972 our legislature adopted the Uniform Alcoholism and Intoxication Treatment Act, AS 47.-37.010–270. The purpose of the statute is to afford alcoholics and intoxicated persons a continuum of treatment, rather than subject them to criminal prosecution. Since 1972 millions of dollars have been spent to carry out the purpose of the Act. In addition, statistics demonstrate that a high percentage of crimes are committed while the offenders are under the influence of intoxicating liquor. Recently, the National Council on Alcoholism submitted an "*Executive Summary of Alcohol Misuse and Alcoholism in Alaska.*" In part, this report states:

Although a great number of the violent crimes against persons are alcohol-related— 64% of all criminal homicides, 34% of all forcible rape cases, and 41% of aggravated assault cases have been linked to alcohol abuse—violent crimes against persons comprise only four percent of all arrests in the state. It is the alcohol-related misdemeanors which have the greatest impact on the criminal justice system. Those misdemeanor arrests for alcohol-related offenses account for 39% of all arrests statewide, and about 60% of all misdemeanor filings in district court, and cost the criminal justice system a total of about $11.76 million in 1975. This figure represents more than three-quarters (77%) of the total cost of alcohol-related crime to

that in this case it is essential to Abraham's reformation as a noncriminal member of society, and to the protection of the public, that he receive rehabilitative treatment with respect to his obvious problem with alcohol. From all that appears in the record and the briefs on this appeal, Abraham is a peaceful citizen when sober, but an extremely violent and dangerous one when he drinks alcohol. We are confident that the vast resources of this state can in some way be directed to correct this all too prevalent situation, which we see on a daily basis when the courts sentence criminal offenders for alcohol-related crimes.

Abraham has a constitutional right to rehabilitative treatment—particularly with respect to his consumption of alcohol. Whether he is securing or will receive such treatment we do not know since this aspect to his appeal has not been explored. This case must be remanded to the superior court for necessary evidentiary hearings in this regard in order that the judiciary can take whatever steps are deemed necessary to make the constitutional right to reformation a reality and not simply something to which lip service is being paid. The hearing to be conducted by the superior court should be in depth, extensive in its scope, and adversary in nature. Every aspect of a criminal offender's right and opportunity to receive rehabilitative treatment relating to the use of alcohol, as it relates to his criminal propensities, should be explored. This hearing shall be expedited.

Abraham also claims that the imprisonment will subject him to cruel and unusual punishment, forbidden by art. I, § 12 of the Alaska Constitution. The basis for this claim, as we stated earlier in this opinion, is that Abraham has lived in a traditional native style, speaks Yupik and virtually no English, eats a native diet which would not be available in prison facilities, and has virtually no experience outside of the traditional life of natives in southwestern Alaska. He claims that incarceration in a place outside of the Bethel area would result in cruel and unusual punishment because he would be in virtual isolation, as he would be unable to communicate with other prisoners or staff, would be unable to participate in any of the programs offered in the facilities, and would be deprived of his natural diet.

There is nothing unusual or cruel in the character of the punishment imposed, i. e., a sentence of imprisonment of five years with four years suspended. Confinement in a penal institution is the most common method of imposing punishment for criminal behavior. It may be true that because of Abraham's difficulty in speaking and understanding English there will be problems in his communicating with the prison authorities, but these problems are not insurmountable. Persons who speak different languages generally will find, as a matter of necessity, adequate ways of communicating their thoughts to each other. And the dietary problem encountered by Abraham in a jail outside of Bethel does not make the imprisonment there unusual in its character and cruel in its excessiveness. Common experience shows that a person will soon adapt himself to eating any nutritious foods even if they may be distasteful to him. Abraham is not being subjected to cruel and unusual punishment in violation of the Eighth Amendment to the United States Constitution or art. I, § 12 of the Alaska Constitution.

There is some question as to whether the application to the superior court by Abraham under Criminal Rule 35(a) and (b) was the appropriate method of obtaining the rehabilitative treatment he is seeking. We

the criminal justice system, which amounted to $15.263 million. These dollar figures do not include any cost to victims, or economic consequences of the criminal activity, just the costs to the enforcement, prosecution, court and corrections components of the criminal justice system. The total cost of $15.263 million for alcohol-related crime amounts to slightly over 30% of the total criminal justice system expenditures.

**534**

need not decide that question. It will suffice for us to say that all future proceedings required pursuant to our remand for an evidentiary hearing are to be considered as if Abraham had initiated a civil action seeking the rehabilitative treatment to which he is entitled to under our constitution. *See Rust v. State*, 582 P.2d 134 (Alaska 1978).

The order denying Abraham's Application for Correction of Sentence, entered by Judge Hanson on December 14, 1976, is vacated and the case is remanded to the superior court for further proceedings not inconsistent with the views expressed in this opinion.

MATTHEWS, Justice, dissenting, with whom BURKE, J., joins.

I agree that the Alaska Constitution affords a prisoner incarcerated for a substantial period of time a right to a rehabilitation program. However, Abraham's remaining term of imprisonment is only a few months. This time is clearly too short for the institution of any meaningful program. Therefore, the extensive hearing mandated by the majority opinion seems destined to be a waste of time, and I would not require it.