NOTICE

*The text of this opinion can be corrected before the opinion is published in the Pacific Reporter. Readers are encouraged to bring typographical or other formal errors to the attention of the Clerk of the Appellate Courts:*

*303 K Street, Anchorage, Alaska  99501*
*Fax:  (907) 264-0878*
*E-mail:  corrections @ appellate.courts.state.ak.us*

IN THE COURT OF APPEALS OF THE STATE OF ALASKA

| | | |
|---|---|---|
| PATRICK L. TICKETT, | ) | |
| | ) | Court of Appeals No. A-11043 |
| Appellant, | ) | Trial Court No. 2KB-09-79 CR |
| | ) | |
| v. | ) | O P I N I O N |
| | ) | |
| STATE OF ALASKA, | ) | |
| | ) | No. 2427 — September 19, 2014 |
| Appellee. | ) | |
| | ) | |

Appeal from the Superior Court, Second Judicial District, Kotzebue, Ben Esch, Judge.

Appearances: Dan S. Bair, Assistant Public Advocate, and Richard Allen, Public Advocate, Anchorage, for the Appellant. Nancy R. Simel, Assistant Attorney General, Office of Special Prosecutions and Appeals, Anchorage, and Michael C. Geraghty, Attorney General, Juneau, for the Appellee.

Before: Mannheimer, Chief Judge, Allard, Judge, and Hanley, District Court Judge.[*]

Judge HANLEY.

---

[*]  Sitting by assignment made pursuant to article IV, section 16 of the Alaska Constitution and Administrative Rule 24(d).

In November 2008, Patrick L. Tickett was driving his snow machine from Kotzebue to Noorvik at approximately sixty miles per hour after having consumed alcohol, marijuana, and cocaine. Two people with a team of sled dogs were on the trail at the same time. Tickett did not see the people or dogs until it was too late for him to avoid a collision. Tickett's snow machine struck the people, killing one and seriously injuring the other. A jury convicted Tickett of manslaughter, first-degree assault, and driving under the influence.

Tickett claims the trial court erred by improperly restricting his cross-examination of one of the State's expert witnesses. We conclude that the superior court's limitation of Tickett's cross-examination of the State's expert was error. However, given the facts of this case, the error was harmless.

Tickett also claims that the trial court erred when it allowed the State to introduce evidence that Tickett had ingested cocaine prior to the collision. We conclude that the court correctly denied Tickett's motion to exclude evidence of the cocaine.

Finally, Tickett asserts his sentence is unlawfully severe. The sentence imposed by the superior court is not clearly mistaken. We therefore affirm the judgment of the superior court.

*Facts and proceedings*

At around 7:15 p.m. on November 19, 2008, Dr. Roger Gollub and Tracey Schaeffer went mushing with a team of sled dogs on a multi-use trail outside of Kotzebue. Gollub was dressed in a white wind suit that did not have reflectors. Schaeffer's parka had a reflector on the back of it, and the dog harnesses had reflective material on them. When they had traveled approximately four miles outside of town,

Schaeffer noticed a snow machine approaching from behind. She decided to stay on the trail but began waving her headlamp to signal the driver of the snow machine.

Tickett was driving the snow machine with Clarissa Cleveland as a passenger. Cleveland had contacted Tickett earlier that day to get a ride to Noorvik. Tickett's goggles were fogging up, he was driving the snow machine at a speed of approximately sixty miles per hour, and he did not see Schaeffer waving her headlamp. By the time Tickett saw Gollub and Schaeffer, it was too late to stop and the snow machine struck Schaeffer, Gollub, and the dog sled.

On impact, Schaeffer was thrown from the sled, and Tickett and Cleveland were thrown from the snow machine. Although she was injured, Schaeffer walked back to the sled and saw that it had landed on Gollub. With Cleveland's help, Schaeffer lifted the sled off of Gollub. Schaeffer administered first aid to Gollub, who was severely injured.

After unsuccessfully attempting to use a radio and start the snow machine, Tickett began walking back to Kotzebue to get help, and Cleveland ran after him. An unidentified person on a snow machine gave Tickett and Cleveland a ride back to Kotzebue. Tickett called 911 when they arrived at his mother's house at about 9:00 p.m.

Gollub died from the injuries he sustained. Schaeffer suffered life-threatening injuries, remained in the hospital for two weeks, and continued to have complications following her release.

When the police questioned Tickett on the night of the incident, an officer detected the odor of alcohol coming from him. Tickett initially denied having used alcohol prior to the crash but later admitted to having taken a couple of shots to "deal with the cold." He later told the police that he had taken two or three swigs of whiskey

before heading to Noorvik. He also stated that he had smoked a joint of marijuana between 6:00 and 7:00 p.m.

Cleveland later told the police that Tickett admitted using cocaine on the day of the incident. Cleveland also testified that even though she did not see Tickett drink any alcohol before the collision, and while he did not appear to be intoxicated, she smelled alcohol on him prior to the collision.

Tickett consented to a blood draw, and a sample was taken shortly before midnight. The State's analysis of the blood sample revealed that Tickett's blood alcohol level was .069 percent. The defense analysis reflected a blood alcohol level of .052 percent. The Washington state toxicology lab also analyzed Tickett's blood and found that it contained substances indicating prior use of marijuana, cocaine, and alcohol (described in more detail below).

A grand jury indicted Tickett on charges of second-degree murder[1] and first-degree assault;[2] the State added a charge of driving under the influence.[3] Prior to trial, Tickett moved to preclude the State from introducing evidence of his cocaine use on the day of the crash, but the court denied the motion.

Superior Court Judge Ben Esch presided over Tickett's trial. During the trial, the court granted Tickett's motion for a judgment of acquittal on the second-degree murder charge. Following the acquittal, the State argued that Tickett was guilty of the lesser-included offense of manslaughter for recklessly causing Gollub's death. The State

---

[1]   AS 11.41.110(a)(2).

[2]   AS 11.41.200(a)(l), (a)(3).

[3]   AS 28.35.030(a)(l), (a)(2).

argued that Tickett was reckless in that he drove under the influence of drugs and alcohol at a speed of sixty miles per hour with foggy goggles.

Tickett countered that his actions were not reckless. He asserted that due to a number of factors, including the weather, Gollub's white clothing, and Schaeffer's head lamp allegedly being broken, he did not see the victims or the dog sled with enough time to stop. Tickett also argued that he was not intoxicated and that Schaeffer was at fault for not moving the sled off the trail.

The jury ultimately convicted Tickett of manslaughter,[4] first-degree assault,[5] and DUI.[6] The trial court sentenced Tickett to a composite sentence of 19 years with 4 years suspended, resulting in 15 years to serve. Tickett appeals his conviction and sentence.

*The trial court erred by precluding Tickett from using a treatise to cross-examine one of the State's experts*

On appeal, Tickett argues that the trial court erred when it precluded him from cross-examining one of the State's expert witnesses with a learned treatise. We agree with Tickett but conclude the error was harmless.

The State presented two experts during the trial to support its theory that Tickett was intoxicated at the time of the crash. Stephan Palmer, a forensic scientist at

---

[4] AS 11.41.120(a)(1) (recklessly causing "the death of another person under circumstances not amounting to murder in the first or second degree").

[5] AS 11.41.200(a)(1) (recklessly causing "serious physical injury to another by means of a dangerous instrument").

[6] AS 28.35.030(a)(1) (driving a motor vehicle while "under the influence of an alcoholic beverage, intoxicating liquor, inhalant, or any controlled substance, singly or in combination").

the State crime laboratory, first testified regarding the test results for Tickett's blood and the effects of alcohol on people. Without objection from the State, Tickett extensively cross-examined Palmer using a book entitled *Alcohol and Drug Intoxication* by Russell Rockerbie.

The next day, the State presented a second expert witness, Brian Capron. Capron was a toxicology supervisor at the Washington state toxicology laboratory; he tested Tickett's blood sample for the presence of drugs. Capron testified that Tickett's blood contained carboxy THC (an inactive metabolite of marijuana), benzoylecgonine (the primary inactive metabolite of cocaine), and a small amount of cocaethylene (an active metabolite that forms when cocaine and alcohol are used concurrently). He further testified about the effects of marijuana and cocaine both separately and in combination with alcohol. Dr. Patricia Sulik, an expert witness for Tickett, was listening telephonically to part of Capron's testimony but had to hang up the phone so that she could board a plane to Alaska for the trial.

During cross-examination, Tickett attempted to use Rockerbie's book to question Capron's opinion regarding how marijuana affects people. He asked Capron if he was aware of Rockerbie's book, and Capron replied that he had never heard of Rockerbie. When Tickett asked Capron to look at a particular page of Rockerbie's book, the State objected on the ground that Tickett had not established the proper foundation for introducing the book as a learned treatise under Evidence Rule 803(18).

The trial court, over Tickett's objection, ruled that if Capron did not acknowledge Rockerbie's book as a learned treatise, then Tickett could not use it to cross-examine Capron. Tickett told the court that Sulik could establish that Rockerbie's book was an authoritative treatise within the meaning of Evidence Rule 803(18), but that Sulik was unavailable because she was flying to Alaska.

The trial court ruled that Sulik's testimony would not make any difference. That is, the judge declared that even if Sulik testified that Rockerbie's book was a learned treatise, he would not allow Tickett to use Rockerbie's book to cross-examine Capron because Capron did not personally acknowledge the book as a learned treatise.

On appeal, Tickett argues that the trial judge misunderstood the foundational basis to introduce statements from a learned treatise, and that the judge incorrectly precluded him from using Rockerbie's book to cross-examine Capron. We agree.

Alaska Evidence Rule 803(18) provides for the admission of hearsay statements contained in "learned treatises" — *i.e.*, published works "on a subject of history, medicine, or other science or art" — to the extent that these hearsay statements either are "relied upon by [an] expert witness in direct examination" or are "called to the attention of an expert witness [during] cross-examination[.]" The proponent of the hearsay evidence must establish that the treatise in question is "a reliable authority," but Rule 803(18) allows the proponent of evidence to do this in one of three ways: through the testimony or admission of the expert witness, through other expert testimony, or by judicial notice. [7]

---

[7]    Alaska Evidence Rule 803(18) reads:

The following [statements] are not excluded by the hearsay rule, even though the declarant is available as a witness:

. . . .

(18) Learned Treatises. To the extent called to the attention of an expert witness upon cross-examination or relied upon by the expert witness in direct examination, statements contained in published treatises, periodicals, or pamphlets on a subject of history, medicine, or other science or art, established as a reliable authority by the testimony or admission of the witness or by other expert testimony or by judicial notice. If admitted, the statements may be read into evidence but may not be received as exhibits.

The second paragraph of the Commentary to Alaska Evidence Rule 803(18) clarifies that Alaska's hearsay exception for learned treatises is meant to codify the holding of *Reilly v. Pinkus*,[8] and other "recent well considered state court decisions" — *i.e.*, the rule that litigants should be allowed to use learned treatises to cross-examine their opponents' expert witnesses when the treatise's status as an authority is established by any means, even though the witnesses themselves do not acknowledge the treatise as authoritative.

In the present case, Tickett made an offer of proof that his expert, Sulik, would testify that Rockerbie's book was an authoritative work. The trial judge ruled that Sulik's testimony would be irrelevant — that Tickett would not be allowed to cross-examine Capron with statements from Rockerbie's book unless Capron personally acknowledged the book as an authoritative treatise. This was error.

However, we agree with the State that this error was harmless under the facts of Tickett's case.

The State called Capron as an expert witness in toxicology to testify about the effects of alcohol and drugs, in particular marijuana and cocaine. Although Tickett was unable to cross-examine Capron using Rockerbie's treatise, Tickett did challenge Capron's testimony by using other authoritative sources. For example, when Tickett cross-examined Capron using scientific studies and another learned treatise, Capron agreed that it is possible for cocaine (a central nervous system stimulant) to reverse some of the fatigue that otherwise might be caused by marijuana (a depressant).

Nor was Tickett completely barred from using the information in Rockerbie's book. He used Rockerbie's book to cross-examine the State's other expert,

---

[8]   338 U.S. 269, 275 (1949).

Palmer, and Tickett's own expert, Sulik, testified extensively about various statements in Rockerbie's book, including Rockerbie's conclusion that the combined effect of marijuana and alcohol could actually *lower* a person's risk of causing an accident.

We also note that Tickett's primary defense was that his collision with Gollub and Schaeffer was an "unavoidable accident" and that he had not acted recklessly even if he had consumed intoxicating substances. Tickett argued that there was "almost no chance" that anyone else would be on the trail outside of Kotzebue when he was traveling, and that the chances were even smaller that he would encounter people who were not wearing reflective clothing and were stopped in the middle of the trail with a dog team.

In his summation to the jury, Tickett only briefly mentioned the evidence of his intoxication — characterizing the State's evidence as "some vague confusing numbers about cocaine and marijuana." Tickett never mentioned Capron's testimony or that Sulik's testimony suggested that the jurors should discount Capron's opinions.

Tickett contends that the trial court's restriction on Tickett's cross-examination rises to the level of constitutional error, and that the error therefore requires reversal of his conviction unless it is shown to be harmless beyond a reasonable doubt. We doubt that the trial judge's erroneous hearsay ruling in this case is of constitutional dimension. But in any event, we conclude that the ruling was harmless beyond a reasonable doubt.

*The trial court properly allowed the State to introduce evidence of Tickett's cocaine use*

Prior to trial, Tickett asked the superior court to bar the admission of any evidence that he had ingested cocaine before the collision. The court denied this motion, and Tickett now challenges the court's ruling.

Tickett argues that the trial court should have excluded all evidence of the cocaine metabolite in his blood pursuant to Evidence Rule 403 because the probative value of this evidence was low and it was unfairly prejudicial. More specifically, he asserts that the amount of the metabolite found in his blood was insignificant and there was no evidence that his consumption of cocaine played a role in the collision. Tickett also asserts that the revelation of his cocaine use would lead the jury to believe he was a "drug user and of unsavory character."

To establish the offense of manslaughter, the State was required to prove that Tickett recklessly caused the death of another person.[9] To establish the offense of first-degree assault, the State had to prove that Tickett recklessly caused serious physical injury to another person by means of a dangerous instrument.[10] And to establish the offense of driving under the influence, the State had to prove that Tickett drove a motor vehicle while under the influence of an alcoholic beverage or a controlled substance, singly or in combination.[11]

The trial judge could properly conclude that the challenged evidence was relevant to prove that Tickett acted recklessly and that he was under the influence. The

---

[9] AS 11.41.120(a)(1).

[10] AS 11.41.200(a)(1).

[11] AS 28.35.030(a)(1).

State presented expert testimony that cocaine is a stimulant and that it can cause a person to be inattentive, to have difficulty with complex, divided-attention tasks such as driving, and to engage in aggressive, risk-taking behavior.

Further, the prosecutor never suggested that the jury should use the evidence of Tickett's cocaine use for any other purpose. And Tickett never asked the judge to give a cautionary instruction on the potential misuses of this evidence.

Given this record, we conclude the trial court did not abuse its discretion when it allowed the State to present evidence of Tickett's ingestion of cocaine.

*Tickett's sentence is not clearly mistaken*

The jury convicted Tickett of manslaughter, first-degree assault, and DUI. Because manslaughter and first-degree assault are class A felonies,[12] and because Tickett caused serious injury and death during the commission of these offenses, he was subject to a presumptive sentencing range of 7 to 11 years on each count.[13] For the DUI conviction, which is a class A misdemeanor,[14] Tickett was subject to a maximum term of 1 year and a minimum term of 3 days of imprisonment.[15]

The sentencing court rejected Tickett's proposed mitigating factor that his conduct was among the least serious within the definitions of manslaughter and first-degree assault, and the court sentenced Tickett to a composite sentence of 19 years with 4 years suspended, resulting in 15 years to serve.

---

[12] AS 11.41.120(b); AS 11.41.200(b).

[13] AS 12.55.125(c)(2)(A).

[14] AS 28.35.030(b).

[15] AS 28.35.030(b)(1)(A).

Tickett claims on appeal that this sentence is clearly mistaken.

"When a defendant [challenges] a composite sentence for two or more criminal convictions, this Court assesses whether the defendant's combined sentence is clearly mistaken, given the whole of the defendant's conduct and history."[16] In sentencing a defendant, Alaska courts consider the factors set forth in *State v. Chaney*[17] and AS 12.55.005. These factors include: the seriousness of the offense, the defendant's criminal history and prospects for rehabilitation, the necessity of confining the defendant to prevent future harm to the public, deterrence, community condemnation, reaffirmation of societal norms, the effect on the victim, and restoration of the victim and the community.[18]

Here, the sentencing court considered the above factors in formulating Tickett's sentence. The court noted that Tickett was nineteen years old at the time of these offenses and that he had had prior contact with the juvenile court, as well as convictions for consuming alcohol as a minor and violating the conditions of his release. The court also noted that while the charges were pending in this case, Tickett committed another, unrelated felony.

The court recognized the positive steps Tickett had taken since this incident, including participating in a substance abuse program, graduating from high school, and completing vocational training. The court reasoned, however, that the tragic death of Gollub and serious injuries to Schaeffer were foreseeable consequences of operating a

---

[16]   Carlson v. State, 128 P.3d 197, 214 (Alaska App. 2006) (original citations omitted).

[17]   477 P.2d 441, 444 (Alaska 1970).

[18]   AS 12.55.005; *Chaney*, 477 P.2d at 444.

snow machine along a public trail at a high rate of speed, and with reduced visibility, while under the influence.

The court considered the effect of the collision on the victims, including Gollub's family, and the court found that Schaeffer's injuries would affect her for the rest of her life. The court concluded that the primary *Chaney* goal was the reaffirmation of societal norms, and that Tickett's sentence needed to demonstrate the seriousness of impaired driving to the larger community. The court further reasoned that its secondary goal was deterrence and that isolation was also a factor.

When reviewing a sentence on appeal, this Court will not disturb the sentencing court's decision unless it is clearly mistaken.[19] Here, the sentencing court carefully considered the sentencing criteria. Based on our review of the record, we conclude that the sentence imposed by the superior court is not clearly mistaken.

*Conclusion*

The judgment of the superior court is AFFIRMED.

---

[19] *Nicholas v. State*, 477 P.2d 447, 449 (Alaska 1970).