*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@akcourts.gov.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| KENNETH J. JOUPPI, | ) | |
| | ) | Supreme Court Nos. S-18598/18637 |
| Petitioner and | ) | |
| Cross-Respondent, | ) | Court of Appeals No. A-13147 |
| | ) | |
| v. | ) | District Court No. 4FA-12-03228 CR |
| | ) | |
| STATE OF ALASKA, | ) | O P I N I O N |
| | ) | |
| Respondent and | ) | No. 7762 – April 18, 2025 |
| Cross-Petitioner. | ) | |
| | ) | |

Petition for Hearing from the Court of Appeals of the State of Alaska, on appeal from the District Court of the State of Alaska, Fourth Judicial District, Fairbanks, Patrick S. Hammers, Judge.

Appearances: Robert John, Law Office of Robert John, Fairbanks, for Petitioner and Cross-Respondent. Donald Soderstrom, Assistant Attorney General, Anchorage, and Treg Taylor, Attorney General, Juneau, for Respondent and Cross-Petitioner. Renee McFarland, Assistant Public Defender, and Samantha Cherot, Public Defender, Anchorage, for Amicus Curiae Public Defender Agency.

Before: Maassen, Chief Justice, Carney, Borghesan, and Pate, Justices, and Winfree, Senior Justice.[*] [Henderson, Justice, not participating.]

PATE, Justice.

## I. INTRODUCTION

The owner of an airplane was convicted of transporting beer into a village that prohibited the importation of alcoholic beverages. Upon conviction, Alaska law mandated forfeiture of the airplane because it had been used to commit the offense. The owner argues that forfeiture of his airplane violates the Excessive Fines Clause of the U.S. Constitution. We disagree.

This case comes to us by way of a petition and cross-petition to review a decision by the court of appeals. The court of appeals had vacated the trial court's ruling that the forfeiture was unconstitutionally excessive, remanding for further fact finding because it concluded the trial court failed to correctly apply the test for excessive fines articulated by the United States Supreme Court in *United States v. Bajakajian*.[1] We conclude that the court of appeals analyzed many of the issues in this case correctly, but we disagree with its conclusion that further fact-finding by the trial court is necessary.

We hold, as a matter of law, that the owner of the airplane failed to establish that forfeiture would be unconstitutionally excessive. Forfeiture of the airplane constituted a fine within the meaning of the Excessive Fines Clause, and application of the factors identified in *Bajakajian* demonstrates that the forfeiture is not grossly disproportional to the gravity of the harm caused by the offense. The owner failed to preserve his other arguments, and we do not address their merits. Because we

---

[*] Sitting by assignment made under article IV, section 11 of the Alaska Constitution and Alaska Administrative Rule 23(a).

[1] 524 U.S. 321, 324, 337-40 (1998).

hold that full forfeiture is permissible under these circumstances, we do not decide whether the relevant forfeiture statute allows partial forfeiture. We remand to the court of appeals for further proceedings consistent with this opinion.

## II. FACTS AND PROCEEDINGS

Kenneth Jouppi owned an airplane that he piloted on behalf of his air taxi company, KenAir LLC. After a jury trial, Jouppi and KenAir were convicted of transporting beer by airplane from Fairbanks into the village of Beaver, a "local option community" that has prohibited the importation, sale, and possession of alcoholic beverages (colloquially, a "dry village").[2] Following Jouppi's conviction and sentencing, the State appealed the trial court's decision declining to order the forfeiture of his airplane on statutory grounds, in what we refer to as *Jouppi I*.[3] After a remand the trial court again declined to order forfeiture of the airplane, this time on constitutional grounds. The State appealed a second time in what we refer to as *Jouppi II*.[4]

---

[2] *See* AS 04.11.491(b) ("If a majority of the persons voting on the question vote to approve the option, an established village shall exercise a local option to prohibit . . . (3) the sale and importation of alcoholic beverages; or (4) the sale, importation, and possession of alcoholic beverages."); AS 04.11.499(a) ("If a majority of the voters vote to prohibit the importation of alcoholic beverages . . . , a person, beginning on the first day of the month following certification of the results of the election, may not knowingly send, transport, or bring an alcoholic beverage into the . . . established village, unless the alcoholic beverage is sacramental wine [and several other conditions are satisfied]."); AS 04.11.499(c)(3) ("[In AS 04.11.499,] 'transport' means to ship by any method, and includes delivering or transferring or attempting or soliciting to deliver or transfer an alcoholic beverage to be shipped to, delivered to, or left or held for pickup by any person."); AS 04.16.200(e) (noting that first or second violation of AS 04.11.499(a) is "a class A misdemeanor if the quantity of alcoholic beverages is less than 10 and one-half liters of distilled spirits or 24 liters of wine, or either a half-keg of malt beverages or 12 gallons or more of malt beverages in individual containers").

[3] *State v. Jouppi* (*Jouppi I*), 397 P.3d 1026 (Alaska App. 2017).

[4] *State v. Jouppi* (*Jouppi II*), 519 P.3d 653 (Alaska App. 2022).

## A.    *Jouppi I* Proceedings

Evidence at trial showed that in April 2012, Jouppi loaded the equivalent of three cases of beer into his airplane for a customer who had chartered his company's services to fly from Fairbanks to Beaver.  The jury heard conflicting evidence about how the beer was packed and how much of it would have been visible to Jouppi.  Some testimony and exhibits indicated that at least one six-pack of beer was packed only in a grocery bag and would have been in plain view to Jouppi as he was loading the airplane.  Jouppi and his passenger both testified that the airplane's cargo, including the beer, was packed in closed boxes except for four loose twelve-packs of soda.  And Jouppi professed that he never opened the boxes.  But a state trooper testified that he observed Jouppi opening and closing boxes while loading the airplane and opined that Jouppi had to be turning a blind eye to the boxes' contents because it would have been impossible not to see that there was alcohol being loaded into the airplane.

The court instructed the jury that it should return a guilty verdict only if it found beyond a reasonable doubt both that Jouppi or KenAir LLC "knowingly sent, transported, or brought less than 12 gallons of malt beverage into the village of Beaver" and that Beaver was a dry village.  It also instructed that the term "transport" includes "attempting or soliciting to deliver or transfer" and that "a party acts 'knowingly' . . . when any failure to possess actual knowledge was due to the party's deliberate ignorance."  The form on which the jury ultimately returned its guilty verdict did not call for any findings regarding the quantity or volume of alcoholic beverages involved in the offense.

The court sentenced Jouppi to 180 days in jail with 177 suspended, a $3,000 fine with $1,500 suspended, and three years of probation.  It sentenced KenAir LLC to a $10,000 fine with $8,500 suspended and three years of probation.  As conditions of probation, the court ordered Jouppi and his company not to transport alcoholic beverages into any dry village and ordered Jouppi not to consume or possess alcoholic beverages in any such community.  The court also ordered both Jouppi and

his company to forfeit their interests in the airplane used in the commission of the offense,[5] stating on the record that it did not impose the forfeiture "lightly" but thought it was "required to" impose forfeiture under the circumstances. On reconsideration, the trial court found that the statute did not authorize the forfeiture of Jouppi's aircraft because the State had seized the alcohol before Jouppi left Fairbanks, meaning that he had not actually "imported" any beer into a dry village. The State appealed the trial court's forfeiture ruling, as modified on reconsideration, and the court of appeals reversed, holding that the statute required the court to order the forfeiture of the airplane.[6] The court of appeals reasoned that because the airplane was used to facilitate the transportation of alcohol imported into a dry village — even though the alcohol was not actually delivered — the statute mandates forfeiture.[7]

## B.   *Jouppi II* Proceedings

On remand to the trial court, Jouppi moved for a declaration that forfeiture of the airplane would be an excessive fine in violation of the United States Constitution[8] and the Alaska Constitution.[9] The trial court held an evidentiary hearing and later

---

[5]     *See* AS 04.16.220(a)(3)(C) (providing that "aircraft, vehicles, or vessels used to transport or facilitate the transportation of . . . alcoholic beverages imported into a municipality or established village in violation of AS 04.11.499(a)" are "subject to forfeiture").

[6]     *Jouppi I*, 397 P.3d at 1035-36.

[7]     *Id.* at 1033-36; *see also* AS 04.16.220(i) ("Upon conviction for a violation of . . . 04.11.499(a) . . . the court shall . . . order the forfeiture of an aircraft [used to transport or facilitate the transportation of alcohol imported into a dry village] to the state . . . .").

[8]     *See* U.S. Const. amend. VIII ("Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted.").

[9]     *See* Alaska Const. art. I, § 12 ("Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted. Criminal administration shall be based upon the following: the need for protecting the public,

granted Jouppi's motion, agreeing that under the circumstances, the forfeiture constituted an excessive fine.

The trial court found that Jouppi, rather than his company, owned the airplane and that the airplane was worth $95,000. It observed that the value of the airplane was "nine and a half times the maximum fine" of $10,000 that could have been imposed on Jouppi.[10]

The trial court stated that "[t]he evidence establishe[d] that there were approximately seventy two beers on the airplane" and found that Jouppi "was 'willfully blind' with respect to six beers that were clearly visible inside a plastic grocery bag." It "assume[d], without deciding, that [Jouppi's] culpability extend[ed] to all of the beer" on the airplane and found that "[t]he gravity of Mr. Jouppi's offense consists of his having attempted to bring approximately 1,152 ounces of beer to a local option community." It also found that this quantity of beer "could have plausibly all been intended for his passenger's personal consumption, or her family's personal consumption." The court stated that Jouppi's offense was "serious" but "not nearly as egregious as other conduct that could result in mandatory forfeiture of a plane under the applicable statutes." For these reasons, it concluded that forfeiture of the airplane would be an unconstitutionally excessive fine because it would be "grossly disproportionate to the gravity of the offense."

The State appealed the trial court's decision, and the court of appeals vacated and remanded.[11] The court of appeals concluded that the trial court had not

---

community condemnation of the offender, the rights of victims of crimes, restitution from the offender, and the principle of reformation.").

[10] The maximum fine that could have been imposed upon conviction of a class A misdemeanor for an individual was $10,000. Former AS 12.55.035(b)(5) (2013). The maximum fine for a defendant organization such as KenAir LLC was $500,000. AS 12.55.035(c)(1)(B).

[11] *Jouppi II*, 519 P.3d 653, 656, 669 (Alaska App. 2022).

correctly applied the test for excessiveness articulated in the Supreme Court's decision in *United States v. Bajakajian*[12] when deciding whether the forfeiture of the airplane was "grossly disproportional to the gravity of the offense."[13]

The court of appeals also concluded that whether Jouppi's conduct was "related to, or comprised part of, other illegal activities" was relevant to the excessive-fines analysis and that the trial court erred by declining to hear evidence the State had offered on that issue.[14] And the court of appeals concluded that the trial court erred by analyzing the harm from Jouppi's offense without considering what would have happened if troopers had not stopped him.[15] It therefore directed the trial court to conduct additional fact-finding and legal analysis on remand, including "a fuller application of the *Bajakajian* factors."[16] The court of appeals also directed the trial court to consider "whether forfeiture of the airplane would deprive Jouppi of his ability to earn a livelihood."[17] Finally, the court of appeals directed that if the trial court concluded that complete forfeiture of Jouppi's airplane would be unconstitutionally excessive, it should "then address the State's argument that a partial forfeiture should be ordered."[18]

Judge Mannheimer filed an opinion concurring in part and dissenting in part.[19] His concurrence provided an extensive historical analysis of the Excessive Fines

---

[12] 524 U.S. 321, 324 (1998).

[13] *Jouppi II*, 519 P.3d at 659-64.

[14] *Id.* at 661-62.

[15] *Id.* at 662-64.

[16] *Id.* at 664.

[17] *Id.* at 664-65.

[18] *Id.* at 666.

[19] *See id.* at 669-99 (Mannheimer, J., concurring in part and dissenting in part).

Clause of the Eighth Amendment as well as Alaska's statutory forfeiture provision.[20] He agreed with the court of appeals' conclusion that the trial court failed to apply the test articulated in *Bajakajian*, but he concluded the record showed that the fine was not excessive as a matter of law; he therefore would have reversed the trial court and directed it to order the forfeiture of the airplane.[21]

### C.  Petition And Cross-Petition For Hearing

Jouppi petitioned for hearing,[22] arguing that the court of appeals should have affirmed the trial court's decision on the merits and held that a criminal forfeiture based on judicial fact-finding about the gravity of the offense would violate his right to a trial by jury.  He also argued that the court of appeals erred by directing the trial court to consider on remand whether the forfeiture statute allows for a partial forfeiture of his airplane if complete forfeiture would be an unconstitutionally excessive fine.[23]

The State filed a response and cross-petition[24] for hearing in which it argued that the court of appeals erred by remanding this case and that it should have reversed the trial court's ruling — holding categorically that the complete forfeiture of Jouppi's airplane is constitutional — for the reasons that Judge Mannheimer stated in his partial concurring opinion.  The State also argued that there is no right to a jury trial on the issue of the gravity of the offense for purposes of analysis under the Excessive Fines Clause.

---

[20]   *Id.*

[21]   *See id.* at 697-99.

[22]   *See* Alaska R. App. P. 302(a), 304.

[23]   *See* AS 04.16.220(i)(1) (requiring court to order forfeiture of defendant's aircraft upon conviction for aircraft-facilitated alcohol importation offense).

[24]   *See* Alaska R. App. P. 302(a), 304.

We granted in part both Jouppi's petition and the State's cross-petition. The Public Defender Agency filed a brief as amicus curiae and participated in the oral argument along with the parties.[25]

## III. STANDARD OF REVIEW

We apply our independent judgment to questions of law, including questions of constitutional and statutory interpretation.[26] "The factual findings made by [the trial court] in conducting the excessiveness inquiry" under the Excessive Fines Clause of the Eighth Amendment to the United States Constitution "must be accepted unless clearly erroneous."[27] But "whether a fine is constitutionally excessive calls for the application of a constitutional standard to the facts of a particular case, and in this context de novo review of that question is appropriate."[28]

## IV. DISCUSSION

The bulk of our analysis begins — and ends — with Jouppi's argument that the forfeiture of his airplane violates the Excessive Fines Clause of the Eighth Amendment. We hold that the forfeiture does not violate the Excessive Fines Clause because it is not grossly disproportional to the gravity of the harm caused by Jouppi's alcohol importation offense. Because Jouppi failed to preserve his arguments pertaining to excessive fines under the Alaska Constitution and the right to a jury trial under the Sixth Amendment and the Alaska Constitution, we decline to address them. And, in light of our holding, we do not need to address the State's argument that a partial forfeiture of Jouppi's airplane is permissible under the forfeiture statute.

---

[25] We thank the Agency for its helpful briefing and argument in this appeal.

[26] *State v. Recall Dunleavy*, 491 P.3d 343, 354 (Alaska 2021).

[27] *United States v. Bajakajian*, 524 U.S. 321, 337 n.10 (1998).

[28] *Id*.

**A.    The Forfeiture Of Jouppi's Airplane Does Not Violate The Eighth Amendment.**

The Eighth Amendment to the United States Constitution prohibits the imposition of "excessive fines."[29]  This prohibition is incorporated against the states through the Due Process Clause of the Fourteenth Amendment.[30]  Under the Supreme Court's decision in *Bajakajian*, an excessive fines challenge requires a two-step analysis.[31]  First, we must determine whether the challenged forfeiture is a "fine" within the meaning of the Excessive Fines Clause.[32]  A forfeiture is a fine if it constitutes a "punishment" for an offense rather than serving a purely remedial purpose.[33]  Second, assuming that the forfeiture is a fine, we must then conduct a proportionality analysis, using factors identified in *Bajakajian* to determine whether the forfeiture is unconstitutionally excessive compared to the gravity of the offense.[34]

**1.    The forfeiture of Jouppi's airplane is a "fine" within the meaning of the Eighth Amendment because it was imposed as a punishment.**

Under *Bajakajian* only forfeitures that are punitive in nature are considered "fines" subject to a proportionality review.[35]  By contrast, nonpunitive

---

[29]    U.S. Const. amend. VIII ("Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted.").

[30]    *Timbs v. Indiana*, 139 S. Ct. 682, 687-89 (2019).

[31]    524 U.S. at 327-34.

[32]    *Id.*

[33]    *Id.* at 328-32; *see also Austin v. United States*, 509 U.S. 602, 610 (1993) ("[A] civil sanction that cannot fairly be said solely to serve a remedial purpose, but rather can only be explained as also serving either retributive or deterrent purposes, is punishment, as we have come to understand the term." (quoting *United States v. Halper*, 490 U.S. 435, 448 (1989))).

[34]    524 U.S. at 334-43.

[35]    *Id.* at 328 ("Forfeitures — payments in kind — are thus 'fines' if they constitute punishment for an offense.").

forfeitures — those that serve a remedial purpose — are not subject to Eighth Amendment scrutiny.[36] Nonpunitive forfeitures historically include those sought in civil in rem proceedings against the property.[37] For the reasons explained below, we conclude that the forfeiture of Jouppi's airplane is punitive.

Civil in rem forfeitures were traditionally brought against property used in the commission of a crime by resort to a legal fiction that the property was "guilty and condemned as though it were conscious instead of inanimate and insentient."[38] In an in rem proceeding, the forfeiture is not part of the punishment for a criminal offense.[39] The conduct of the property owner is irrelevant; an entirely innocent owner may be forced to forfeit the property if it were used to commit a crime.[40] For example, the government has sought forfeiture against goods illegally imported into the country,[41] vehicles used for drug trafficking,[42] and stolen art.[43]

---

[36]     *Id.* at 330-31; *Tyler v. Hennepin County, Minnesota*, 143 S. Ct. 1369, 1381 (2023) (Gorsuch, J., concurring) (citing *Austin v. United States*, 509 U.S. 602, 610 (1993)).

[37]     *Bajakajian*, 524 U.S. at 330.

[38]     *Waterloo Distilling Corp. v. United States*, 282 U.S. 577, 581 (1931).

[39]     *Id.*

[40]     *See, e.g.*, *Origet v. United States*, 125 U.S. 240, 246 (1888) ("The person punished for the offense may be an entirely different person from the owner of the merchandise, or any person interested in it. The forfeiture of the goods of the principal can form no part of the personal punishment of his agent.").

[41]     *See, e.g.*, *United States v. An Antique Platter of Gold*, 184 F.3d 131, 133-34 (2d Cir. 1999) (involving antique gold platter imported with fraudulent customs form).

[42]     *See, e.g.*, *Calero-Toledo v. Pearson Yacht Leasing Co.*, 416 U.S. 663, 665 (1974) (involving yacht used to transport marijuana).

[43]     *See, e.g.*, *United States v. Portrait of Wally*, 663 F. Supp. 2d 232, 250-53 (S.D.N.Y. 2009) (involving stolen painting).

The State's lead argument on appeal is that the forfeiture of Jouppi's airplane is "immune" from a proportionality analysis under the Excessive Fines Clause because the airplane is an "instrumentality" that Jouppi used to commit the crime. Because similar property would historically have been subject to civil forfeiture in an in rem proceeding against the property itself without regard for proportionality, the State argues that the multi-factor proportionality analysis described in *Bajakajian* does not apply here.

However, as the court of appeals correctly concluded, the forfeiture of Jouppi's airplane is not analogous to the traditional civil in rem forfeitures that the Court suggested were nonpunitive.[44] In *Bajakajian* the Court identified four "hallmarks" that distinguish nonpunitive forfeitures from punitive forfeitures. The hallmarks are (1) whether the government has "proceeded against the [property] itself" or has "instead sought and obtained a criminal conviction of [the] respondent personally," (2) whether the forfeiture "serves [a] remedial purpose," (3) whether the forfeiture "is designed to punish the offender," and (4) whether the forfeiture "can[] be imposed upon innocent owners."[45]

The forfeiture of Jouppi's airplane bears none of the hallmarks of an in rem proceeding identified in *Bajakajian*. The first hallmark — whether the government proceeded against the property in rem or against the defendant in personam — strongly indicates that the forfeiture is punitive. While the State could have sought forfeiture against the airplane in an in rem proceeding,[46] it did not. The State's argument that the forfeiture is immune from excessive fines scrutiny because the State could have

---

[44]    *See Jouppi II*, 519 P.3d 653, 659 (Alaska App. 2022).

[45]    *United States v. Bajakajian*, 524 U.S. 321, 331-32 (1998).

[46]    *See* AS 04.16.220(d)(2); *see also Jouppi II*, 519 P.3d at 674 (Mannheimer, J., concurring in part and dissenting in part) (highlighting relationship between in personam and in rem forfeitures).

-12-                                                                7762

proceeded against the airplane in rem, as an instrumentality of the crime, is indistinguishable from an argument rejected by the Court in *Bajakajian*.

In *Bajakajian* the defendant was convicted of willfully failing to report the transfer of more than $10,000 in currency out of the United States.[47] The government argued that the Eighth Amendment permitted forfeiture of the entirety of the defendant's $357,144 in unreported currency because it was an "instrumentality" of the crime.[48] The Court responded that it was irrelevant whether the currency was an instrumentality of the crime because the government pursued criminal sanctions in personam against the defendant, rather than proceeding in rem against the currency.[49] Because the proceeding was in personam, the forfeiture of the currency was punitive.[50] The State's argument in this case is indistinguishable: forfeiture was imposed as a mandatory criminal sanction following Jouppi's in personam conviction.

The remaining hallmarks also indicate that the forfeiture of Jouppi's airplane is punitive. Under the second and third hallmarks, the forfeiture does not serve "the remedial purpose of compensating the Government for a loss," and the forfeiture is designed "to punish the offender."[51] As Judge Mannheimer explained in his concurrence, the legislative history of the forfeiture statute demonstrates that the legislature designed the forfeiture provision to *penalize* and *deter* the use of aircraft to

---

[47] *Bajakajian*, 524 U.S. at 335.

[48] *Id.* at 333, 335.

[49] *Id.*

[50] *Id.*

[51] *Id.* at 329, 332. For example, the Court in *Bajakajian* found that forfeiture of the defendant's $357,144 in unreported currency would not compensate the government for its asserted informational loss. *Id.* at 329.

smuggle alcohol into dry villages,[52] not to compensate the government for losses sustained. Moreover, the fourth hallmark heavily indicates that the forfeiture is punitive because, under the terms of the statute, forfeiture cannot be imposed against an innocent property owner.[53] And as the Court emphasized in *Bajakajian*, traditional nonpunitive forfeitures could be imposed against an entirely innocent owner of the property.[54]

In sum, all four hallmarks identified by the Court in *Bajakajian* support our conclusion that the forfeiture of Jouppi's airplane was a punitive sanction — and, thus, a "fine" under the Eighth Amendment. Accordingly, we proceed to the second step of Excessive Fines Clause analysis to determine whether the forfeiture is unconstitutionally excessive.

### 2. The forfeiture of Jouppi's airplane is not an excessive fine because it is not grossly disproportional to his offense.

The second step of analysis under the Excessive Fines Clause requires us to determine whether the forfeiture was "excessive."[55] The Court has emphasized that

---

[52] *See Jouppi II*, 519 P.3d 653, 678-81 (Alaska App. 2022) (Mannheimer, J., concurring in part and dissenting in part) (concluding that legislative history demonstrates that legislature "viewed the mandatory forfeiture of aircraft as a severe but necessary penalty to punish and deter the smuggling of alcoholic beverages into rural Alaska").

[53] *See* AS 04.16.220(e). To successfully defend against forfeiture, the owner of the property must show that he (1) was not a party to the violation, (2) did not have knowledge that the property was used in violation of the law, and (3) did not have knowledge that the person who committed the violation previously committed other violations of the statute or had a criminal record of prior violations of the statute. *Id.*

[54] *Bajakajian*, 524 U.S. at 330; *see also Origet v. United States*, 125 U.S. 240, 246 (1888) ("The [statute] does not say that the merchandise shall be forfeited only on the conviction of some offender, whether the owner of the merchandise or one of the other persons named in the [statute]. The person punished for the offense may be an entirely different person from the owner of the merchandise, or any person interested in it.").

[55] *See Bajakajian*, 524 U.S. at 334-43; *Jouppi II*, 519 P.3d at 658.

the "touchstone" of the excessiveness inquiry is proportionality:  "The amount of the forfeiture must bear some relationship to the gravity of the offense that it is designed to punish."[56]  If the forfeiture is "grossly disproportional" to the gravity of the offense committed, then the forfeiture is unconstitutionally excessive.[57]

At the outset, in *Bajakajian* the Court identified two important principles that guide our proportionality analysis.  First, the legislature is primarily responsible for determining the appropriateness of the penalties available for a particular criminal offense.[58]  Second, because any judicial assessment of the gravity of an offense is inherently imprecise, gross disproportionality (as opposed to strict proportionality) is the standard for excessiveness.[59]  Thus, when the offender is within the "class of persons for whom the statute was principally designed," courts owe some deference to legislative assessments of the proportionality of the penalty.[60]

---

[56]     *Bajakajian*, 524 U.S. at 334.

[57]     *Id.*

[58]     *Id.* at 336.

[59]     *Id.*

[60]     *Id.* at 336, 338 (citing *Solem v. Helm*, 463 U.S. 277, 290 (1983)).  The State argues that courts *must* defer to legislative determinations on proportionality.  The State goes too far.  Courts are not required to give dispositive weight to legislative determinations.  Because "no penalty is per se constitutional," courts have an independent duty to weigh the proportionality of statutorily prescribed punishments even as they extend "substantial deference to the broad authority that legislatures necessarily possess in determining the types and limits of punishments for crimes." *Solem*, 463 U.S. at 290; *see also Grant ex rel. United States v. Zorn*, 107 F.4th 782, 800 (8th Cir. 2024) (quoting *Yates v. Pinellas Hematology & Oncology, P.A.*, 21 F.4th 1288, 1318, 1323 (11th Cir. 2021) (Newsom, J., concurring)).

The Court in *Bajakajian* derived this standard from Cruel and Unusual Punishments Clause[61] decisions, including *Solem v. Helm*[62] and *Rummel v. Estelle*,[63] that emphasized the importance of deference to legislative judgments about appropriate punishments.[64]   Those decisions also made clear that gross disproportionality challenges should rarely succeed and that courts can often reject such challenges without engaging in extensive analysis.[65]

State and federal courts applying the *Bajakajian* decision have distilled several factors that the Court identified as relevant in determining whether a forfeiture is grossly disproportional.   The factors include:   (1) the nature and extent of the defendant's crime and its relation to other criminal activity, (2) whether the defendant falls among the class of persons for whom the statute was principally designed, (3) the other penalties that might be imposed on the defendant under the applicable provisions of law, and (4) the nature and extent of the harm caused by the defendant's offense.[66]

---

[61]   U.S. Const. amend. VIII ("Excessive bail shall not be required . . . nor cruel and unusual punishments inflicted.").

[62]   463 U.S. at 290.

[63]   445 U.S. 263, 271 (1980).

[64]   *See, e.g.*, *Solem*, 463 U.S. at 290 ("Reviewing courts, of course, should grant substantial deference to the broad authority that legislatures necessarily possess in determining the types and limits of punishments for crimes . . . ."); *Rummel*, 445 U.S. at 275-76 ("[T]he lines to be drawn [when measuring proportionality] are indeed 'subjective,' and therefore properly within the province of legislatures, not courts.").

[65]   *See Solem*, 463 U.S. at 290 n.16 ("[A] reviewing court rarely will be required to engage in extended analysis to determine that a sentence is not constitutionally disproportionate."); *Rummel*, 445 U.S. at 272 ("Outside the context of capital punishment, successful challenges to the proportionality of particular sentences have been exceedingly rare.").

[66]   *United States v. Bajakajian*, 524 U.S. 321, 334-44 (1998); *see also State v. Grocery Mfrs. Ass'n*, 502 P.3d 806, 812 (Wash. 2022); *United States v. Beecroft*, 825 F.3d 991, 1000-01 (9th Cir. 2016); *United States v. Viloski*, 814 F.3d 104, 110-11 (2d Cir. 2016).

These factors are nonexhaustive, and courts are free to consider other factors relevant to the proportionality of the forfeiture to the gravity of the offense.[67] We address each factor in turn.

First is the nature and extent of the defendant's crime and its relation to other criminal activity.[68] In *Bajakajian* the defendant was convicted only of failing to report his currency.[69] The Supreme Court found that this weighed against the constitutionality of the forfeiture because it was isolated and unconnected to other criminal activity.[70] The Court also noted that Bajakajian failed to report the currency "because of fear stemming from cultural differences" — because the defendant "[grew] up as a member of the Armenian minority in Syria, [and] had a distrust for the Government" — not for a nefarious purpose.[71] While Jouppi was convicted of only one instance of alcohol importation unconnected to other criminal activity, the nature and extent of the crime is more serious than Bajakajian's. He knowingly transported a six-pack of alcohol in plain view while acting in his professional capacity as the

---

[67] *United States v. Mackby*, 339 F.3d 1013, 1016 (9th Cir. 2003) ("*Bajakajian* does not mandate the consideration of any rigid set of factors . . . ."); *see also Collins v. SEC*, 736 F.3d 521, 527 (D.C. Cir. 2013) (observing that factors derived from *Bajakajian* "hardly establish a discrete analytic process"); *Reese v. Triborough Bridge & Tunnel Auth.*, 91 F.4th 582, 589 (2d Cir. 2024) (noting that *Bajakajian* factors are "not exhaustive" of factors courts may consider); *Viloski*, 814 F.3d at 110 (same); *United States v. Wagoner Cnty. Real Est.*, 278 F.3d 1091, 1101 (10th Cir. 2002) (describing "catalog of factors" used to assess proportionality as "not 'necessarily exclusive' " (quoting *United States v. 829 Calle De Madero*, 100 F.3d 734, 738 (10th Cir. 1996))).

[68] *Bajakajian*, 524 U.S. at 338-39.

[69] *Id.*

[70] *Id.*

[71] *Id.* at 326 (internal quotation marks omitted).

operator of an air taxi company and the pilot of the airplane.[72] This factor suggests that the forfeiture of his airplane is not grossly disproportional.

Second is whether the defendant falls within the class of persons targeted by the statute.[73] The trial court's factual findings establish that Jouppi is within the class of persons targeted by the statute. Among other facts, the trial court found that "there were approximately seventy two beers on the plane, and that [Jouppi] was 'willfully blind' with respect to six beers that were clearly visible inside a plastic grocery bag." The seventy-two beers were destined for a dry village. Jouppi was clearly within the class of persons targeted by the statute: airplane owners and pilots who knowingly facilitate the importation of alcohol for consumption in a dry village.[74]

Importantly, the legislative history of the forfeiture provision also confirms that Jouppi is within the class of offenders that the Alaska legislature targeted. The forfeiture provision was first enacted in 1980 as part of a comprehensive statutory scheme regulating alcoholic beverages.[75] The law was passed in response to a report by the Governor's Commission on the Administration of Justice and subsequent studies indicating that excessive and unregulated alcohol consumption, particularly in rural areas, is a significant cause of crime in Alaska.[76] The original provision authorized the forfeiture of any aircraft, watercraft, or motor vehicle used to illegally transport alcohol into a local option community; however, the trial court had discretion whether to impose

---

[72]    *See* AS 04.11.499(a).

[73]    *See Bajakajian*, 524 U.S. at 338.

[74]    *Cf. id.* (noting that defendant did not fit within class of persons targeted by currency reporting statute — money launderers, drug traffickers, and tax evaders — because his transportation of currency was otherwise lawful).

[75]    Ch. 131, SLA 1980; *Jouppi II*, 519 P.3d at 663.

[76]    GOVERNOR'S COMM'N ON THE ADMIN. OF JUST., STANDARDS AND GOALS FOR CRIMINAL JUSTICE 1-2 (1976); *see also Harrison v. State*, 687 P.2d 332, 335-36 (Alaska App. 1984) (recounting legislative history).

a forfeiture.[77] In 2004 the forfeiture provision was amended to its current form, which removed the trial court's discretion and *mandated* the forfeiture of an aircraft used to unlawfully import alcohol into a local option community.[78] The purpose of this amendment was to "strengthen[] the forfeiture law for bootlegging offenses" to better deter the unlawful importation of alcohol.[79]

The 2004 amendments to the forfeiture provision also prescribe different treatment for aircraft than for other transportation devices used to unlawfully import alcohol. When a motor vehicle or watercraft is used, it is subject to mandatory forfeiture only if:

> (1) the bootlegger has a conviction for a violent felony or is on felony probation or parole, (2) the bootlegger has a prior conviction for bootlegging, or (3) the bootlegger has been convicted under AS 04.11.010 and the amount of alcohol involved is twice the amount presumed to be possessed for sale, as set out in AS 04.11.010(c).[80]

By contrast, an aircraft is always subject to mandatory forfeiture under the statute, regardless of whether the conviction is a misdemeanor or felony or is the defendant's first conviction.[81] The legislature's differential treatment suggests that it viewed the gravity of aircraft-facilitated importation as more severe than other methods of unlawful importation.

As the Court in *Bajakajian* emphasized, "judgments about the appropriate punishment for an offense belong in the first instance to the legislature."[82] Given the

---

[77] Former AS 04.16.220(a)(3) (1980).

[78] Ch. 124, § 11, SLA 2004.

[79] Letter from David Marquez, Assistant Att'y Gen., to John Harris, Co-Chair, H. Fin. Comm. (Apr. 30, 2004).

[80] *Id.* (citing AS 04.16.220(i)).

[81] AS 04.16.220(i); *Jouppi I*, 397 P.3d 1026, 1034-35 (Alaska App. 2017).

[82] *United States v. Bajakajian*, 524 U.S. 321, 336 (1998).

legislative determination that the forfeiture of an aircraft is proportional to the gravity of the harm that results from unlawful alcohol importation into a dry village, coupled with the trial court's fact-finding that places Jouppi squarely within the legislature's targeted class of offenders, we accord some deference to the legislature's judgment on the gravity of his offense. Absent evidence to the contrary, the forfeiture of Jouppi's airplane is unlikely to be excessive.[83] And here, Jouppi has not identified evidence to rebut the determination that he is within the targeted class of offenders. Accordingly, this factor strongly suggests that the forfeiture is not grossly disproportional.

Third is a consideration of other penalties that might be imposed on the defendant in comparison to the value of the forfeiture.[84] In *Bajakajian* the government sought forfeiture of $357,144 — over 70 times the maximum fine of $5,000 for the offense.[85] Because the maximum fine and sentence were "but a fraction of the penalties authorized," the Court concluded that the defendant's relative culpability was minimal relative to the "tax evaders, drug kingpins, or money launderers" targeted by the statute — all of whom would face the same maximum fine of $5,000.[86] In this case, the value of Jouppi's airplane is only 9.5 times the maximum fine that could have been imposed.[87] The proportionality between the value of the forfeiture and the maximum fine demonstrates that Jouppi's culpability is in line with the legislature's assessment

---

[83] *See County of Nassau v. Canavan*, 802 N.E.2d 616, 622 (N.Y. 2003) ("Given the gravity of the crime of drunk driving, it is difficult to imagine that forfeiture of an automobile for such a crime could ever be excessive."); *Collins v. SEC*, 736 F.3d 521, 527 (D.C. Cir. 2013) ("A penalty that is not far out of line with similar penalties imposed on others and that generally meets the statutory objectives seems highly unlikely to qualify as excessive in constitutional terms.").

[84] *See Bajakajian*, 524 U.S. at 338-39.

[85] *Id.* at 337-38.

[86] *Id.* at 338-39, 339 n.14.

[87] The trial court valued his airplane at $95,000 and he faced a maximum potential fine of $10,000. Former AS 12.55.035(b)(5) (2013).

of the culpability of other violators of the statute.[88]  Compared to the forfeiture in *Bajakajian*, this factor suggests that the forfeiture is not grossly disproportional.[89]

Last is the nature and extent of the harm caused by the defendant's offense.[90]  In *Bajakajian* the Court concluded that the extent of harm caused by the defendant's isolated failure to report the currency was minimal because it "affected only one party, the Government, and in a relatively minor way.  There was no fraud on the United States, and [the defendant] caused no loss to the public fisc."[91]  In essence, the government was only deprived of information about the currency.[92]  The nature and extent of harm caused by Jouppi's illegal alcohol smuggling is far greater.  Alcohol abuse in rural Alaska leads to increased crime; disorders, such as alcoholism; conditions, such as fetal alcohol spectrum disorder; and death, imposing substantial costs on public health and the administration of justice.[93]  Within this context, it is clear that the illegal importation of even a six-pack of beer causes grave societal harm.  This

---

[88]  *Cf. Bajakajian*, 524 U.S. at 338-39, 339 n.14.

[89]  *See United States v. Castello*, 611 F.3d 116, 123 (2d Cir. 2010) (holding forfeiture over 40 times value of maximum fine constitutional); *United States v. Mackby*, 339 F.3d 1013, 1016-19 (9th Cir. 2003) (holding civil forfeiture approximately ten times maximum value of fine constitutional); *United States v. Rafael*, 282 F. Supp. 3d 407, 413 (D. Mass. 2017) (same); *United States v. Finazzo*, No. 10-CR-457, 2014 WL 3818628, at *34-35 (E.D.N.Y. Aug. 1, 2014) (finding civil forfeiture approximately ten times maximum value of fine constitutional), *rev'd on other grounds*, 850 F.3d 94 (2d Cir. 2017).  *But see United States v. $100,348.00 in U.S. Currency*, 354 F.3d 1110, 1122-23 (9th Cir. 2004) (concluding that forfeiture of approximately 3 to 20 times value of maximum fine was grossly disproportional).

[90]  *Bajakajian*, 524 U.S. at 337-39.

[91]  *Id.* at 339.

[92]  *Id.*

[93]  *Jouppi II*, 519 P.3d 653, 678-80 (Alaska App. 2022) (Mannheimer, J., concurring in part and dissenting in part) (citing *Harrison v. State*, 687 P.2d 332 (Alaska App. 1984); *Abraham v. State*, 585 P.2d 526 (Alaska 1978)).

factor strongly suggests that the forfeiture is not grossly disproportional. Taking into consideration all of the factors discussed above, we conclude that the forfeiture of Jouppi's airplane is not grossly disproportional to the gravity of his offense.

The court of appeals identified four issues for the trial court to address on remand when reevaluating the proportionality of the forfeiture under the *Bajakajian* factors: (1) whether the forfeiture statute at issue is "aimed at offenders like Jouppi"; (2) whether Jouppi was criminally culpable for all 72 cans of beer found in his aircraft, or only for the "clearly visible" six-pack; (3) whether Jouppi's offense was "part of a larger pattern of illegal conduct"; and (4) whether the forfeiture would "effectively deprive [Jouppi] of his future ability to earn a living."[94] None of these issues warrant remand because any findings made by the trial court would not alter our conclusion that the forfeiture is not grossly disproportional.

The first issue — whether the forfeiture statute is "aimed at offenders like Jouppi" — does not warrant remand because Jouppi is clearly within the class of offenders targeted by the statute for the reasons discussed previously. The second issue — whether Jouppi was criminally culpable for all 72 beers — would not establish gross disproportionality regardless of the trial court's determination. After a post-conviction evidentiary hearing, the trial court found that Jouppi had been "willfully blind" to a six-pack of beer that was "clearly visible" but did not determine his culpability with respect to the other 66 beers. It is clear to us that the legislature

---

[94] *Id.* at 661-65 (majority opinion). The court of appeals also directed the trial court to make "clearer findings regarding the extent of the harm caused by Jouppi's illegal conduct." *Id.* at 662. The trial court's findings on the extent of harm do not warrant remand because the harm from airplane-facilitated alcohol importation was clearly addressed in the legislative history of the forfeiture provision and Jouppi is plainly within the class of offenders it targeted.

determined that the harm from even a six-pack of beer knowingly imported into a dry village is severe enough to warrant forfeiture of an aircraft.[95]

For the same reasons, remand for the third issue identified by the court of appeals is unnecessary. Regardless of whether Jouppi's conduct was part of a "larger pattern of illegal conduct," forfeiture of the airplane is mandated by the statute because of the harm that a single instance of aircraft-facilitated alcohol importation has on rural communities. In *Bajakajian*, by contrast, the defendant's lack of connection to other criminal activity supported the Court's conclusion that he was not within the class of offenders targeted by the currency reporting statute.[96] The statute was intended to target money launderers, drug traffickers, and tax evaders, whereas Bajakajian's failure to report was unconnected to any other illegal activities.[97] In this case, the forfeiture provision was intended to target the importation of alcohol into dry villages by aircraft. It is not particularly relevant whether Jouppi's offense was part of a larger pattern of criminal activity because a pilot knowingly transporting a passenger's alcohol to a dry village is precisely the kind of person and conduct that the legislature was concerned about.

Lastly, remand for the fourth issue — whether the forfeiture would deprive Jouppi of his livelihood — is also unnecessary. Jouppi argues that any forfeiture that deprives a defendant of his livelihood is unconstitutionally excessive. We assume, without deciding, that a forfeiture cannot constitutionally deprive Jouppi of his livelihood. As the proponent of a constitutional challenge, Jouppi had the burden

---

[95] *See* AS 04.16.220; Letter from David Marquez, Assistant Att'y Gen., to John Harris, Co-Chair, H. Fin. Comm. (Apr. 30, 2004) (discussing highlights of Governor Murkowski's 2004 Crime Bill (CSSB 170)); SECTIONAL SUMMARY FOR SENATE BILL 170 (Apr. 5, 2004) (noting that forfeiture amendment was intended to mandate forfeiture of aircrafts used to unlawfully transport alcohol without exception).

[96] *Bajakajian*, 524 U.S. at 337-39.

[97] *Id.*

to develop both the factual and legal basis for his Eighth Amendment arguments in the trial court. At the post-conviction evidentiary hearing, Jouppi testified that he was "pretty much retired from the air taxi business" and that if the airplane were returned to him, he would "probably just sell it." He did not introduce evidence that the forfeiture forced him into retirement. He also failed to rebut trial testimony showing that he owned a second airplane also used by his company, in which he had transported his company's charter passenger to Beaver later on the same day as the offense at issue in this case. Jouppi therefore failed to show that the forfeiture unconstitutionally burdened his livelihood.

In sum, we hold that the forfeiture of Jouppi's airplane is not grossly disproportional to the gravity of the offense for which he has been convicted and, therefore, the forfeiture does not violate the Excessive Fines Clause of the Eighth Amendment. Remand to the trial court for the issues identified by the court of appeals is thus unnecessary.

### B. Jouppi Failed To Preserve His Additional Arguments Regarding The Alaska Constitution And The Sixth Amendment.

Jouppi raises three additional arguments. First, in his opening brief, Jouppi "adopts" the Public Defender Agency's argument, as amicus curiae, "by reference." He contends, for the first time, that the Excessive Fines Clause of the Alaska Constitution[98] is more protective than its federal counterpart. He and the Agency argue that the Alaska Excessive Fines Clause allows "only those fines that are reasonably necessary to further the goals of criminal administration." Although — as the State acknowledges — Jouppi mentioned the Alaska Constitution's protection against excessive fines in the court of appeals and the trial court, he did not explicitly argue that

---

[98]     Alaska Const. art. I, § 12 ("Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted.").

Alaska's Excessive Fines Clause requires a more protective standard than the "gross disproportionality" test articulated in *Bajakajian*.

Second, Jouppi argues that the forfeiture of his airplane violates his right to a jury trial under the Sixth Amendment of the U.S. Constitution.[99]  He argues that when the constitutionality of a forfeiture depends on additional factual findings and those findings are made by the sentencing court, rather than by a jury, the court impermissibly encroaches on a defendant's constitutional right to a jury's determination of guilt beyond a reasonable doubt.  Jouppi devoted one sentence to his argument under the Sixth Amendment in his briefing to the court of appeals.  The court of appeals did not address this argument in its opinion.[100]  Jouppi filed a petition for rehearing before the court of appeals, arguing that the court erred by not addressing his argument under the Sixth Amendment.  The court of appeals denied his petition and Judge Mannheimer noted in his concurrence that Jouppi's argument was waived for failure to adequately brief the issue.  We agree with Judge Mannheimer.

Lastly, Jouppi argues, for the first time, that the right to a jury trial under the Alaska Constitution[101] is broader than the right under the federal constitution.  But arguments not raised explicitly prior to appeal are generally waived.[102]  "[A] party may not present new issues or advance new theories to secure a reversal of a lower court

---

[99]    U.S. Const. amend. VI.

[100]    *See Jouppi II*, 519 P.3d 653, 653-69 (Alaska App. 2022).

[101]    Alaska Const. art. I, § 11.

[102]    *See, e.g.*, *Wells v. Barile*, 358 P.3d 583, 589 (Alaska 2015).

decision."[103]  Having failed to adequately brief the issues before the court of appeals, we hold that Jouppi waived all three of his additional arguments.[104]

## V.    CONCLUSION

We VACATE the judgment of the court of appeals and REMAND to the court of appeals for further proceedings consistent with this opinion.

---

[103]    *Zeman v. Lufthansa German Airlines*, 699 P.2d 1274, 1280 (Alaska 1985).

[104]    We do not review Jouppi's arguments for plain error because he did not address plain error in his briefing.  *See* Alaska R. App. P. 212(c)(1)(H) ("For any issue not raised or ruled on in the lower court, the appropriate argument section must address the applicability of the plain error doctrine.").